**Jody BAKER, et al., Plaintiffs,**

v.

**STONE COUNTY, MISSOURI, et al., Defendants.**

No. 96–5084–CV–SW–1.

United States District Court,
W.D. Missouri,
Southwestern Division.

March 16, 1999.

Richard Crites, Springfield, MO, for plaintiffs.

Ransom A. Ellis, Ellis, Ellis, Hammons & Johnson, Springfield, MO, for defendants.

## ORDER

WHIPPLE, District Judge.

Plaintiffs have brought a wage and hour claim against Defendants under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. Plaintiffs are current and former sheriff's deputies, dispatchers, and jailers with the Stone County, Missouri Sheriff's Department. These Plaintiffs have sued the Stone County Commission, current Commissioners Tony DeLong and Alden Hembree, former Commissioner Duane Clark, Stone County Clerk Carolyn Dean, current Stone County Sheriff Richard Hill and former Stone County Sheriff Lonnie Mease. Plaintiffs claim is for unpaid overtime pursuant to the FLSA. Starting April 29, 1998, the Court conducted a three day bench trial on these claims. For the following reasons, the Court finds that Plaintiffs' rights under the FLSA have been violated.

## I. FINDINGS OF FACT

### A. Plaintiffs

1. Plaintiff Baker was hired on March 6, 1995, as a sheriff's deputy and is still employed in that capacity by the Sheriff's Department. During his employment with the Sheriff's Department, Plaintiff Baker has earned the following hourly wages:

| | |
|---|---|
| 1995 | $7.80 |
| 1996 | $8.75 |
| 1997 | $10.00 |
| 1998 | $10.25 |

2. Plaintiff Janie Beck was employed by the Stone County Sheriff's Department on March 23, 1993, and is still employed. Plaintiff Beck was employed as a dispatcher until January, 1997, at which time she was promoted to Dispatch Supervisor. During her employment with the Sheriff's Department, Plaintiff Beck has earned the following hourly wages:

| | |
|---|---|
| 1993 | $6.00 |
| 1994 | $6.50 |
| 1995 | $7.25 |
| 1996 | $8.00 |
| 1997 | $8.65 |
| 1998 | $8.90 |

3. Plaintiff Jimmy Beck was hired by the Stone County Sheriff's Department on January 26, 1993, and is still employed. Plaintiff was initially employed as a correctional officer and was transferred to the position of Sheriff's deputy on September 22, 1995. During his employment with the Sheriff's Department, Plaintiff Jimmy Beck has earned the following hourly wages:

| | |
|---|---|
| 1993 | $6.00 |
| 1994 | $6.50 |
| 1995 | $7.30 |
| September 22, 1995 | $7.80 |
| 1996 | $8.30 |
| 1997 | $10.00 |
| 1998 | $10.25 |

4. Plaintiff Greg Bolin was hired by the Sheriff's Department on or about January 8, 1995, as a jailer. He became a deputy sheriff on or about October 17, 1995. Plaintiff Bolin's employment with the Sheriff's Department terminated on or about December 31, 1996. During his employment with the Sheriff's Department, Plaintiff Bolin earned the following hourly wages:

| | |
|---|---|
| 1995 | $7.25 |
| October 17, 1995 | $7.80 |
| 1996 | $8.30 |

Upon his termination from employment with the Sheriff's Department, Bolin accepted payment equal to 23.50 hours of

accrued compensatory time and signed a written receipt.

5. Plaintiff Paul Branstetter was hired by the Sheriff's Department on or about March 23, 1993, as a jailer. He became a dispatcher on or about October 31, 1994, and a deputy sheriff on or about January 1, 1995. He is still employed by the Sheriff's Department as a deputy sheriff. During his employment with the Sheriff's Department, Plaintiff Branstetter earned the following hourly wages:

| | |
|---|---|
| 1993 | $6.00 |
| 1994 | $6.50 |
| October 31, 1994 | $7.80 |
| 1995 | $8.74 |
| 1996 | $9.75 |
| 1997 | $10.00 |
| 1998 | $10.25 |

6. Plaintiff Gary Max Carr was hired by the Sheriff's Department on or about April 1, 1993, as a deputy sheriff, and he is still employed in that capacity. During his employment with the Sheriff's Department, Plaintiff Carr has earned the following hourly wages:

| | |
|---|---|
| 1993 | $7.80 |
| 1994 | $8.75 |
| 1995 | $9.25 |
| 1996 | $9.75 |
| 1997 | $10.00 |
| 1998 | $10.25 |

7. Plaintiff Gary Kent Doucey was hired by the Sheriff's Department on or about August 8, 1991, as a dispatcher. He became a deputy sheriff on or about February 7, 1994. His employment with the Sheriff's Department terminated on or about April 12, 1997. During his employment with the Sheriff's Department, Plaintiff Doucey earned the following hourly wages:

| | |
|---|---|
| 1993 | $6.40 |
| 1994 | $7.80 |
| 1995 | $8.75 |
| 1996 | $9.75 |
| 1997 | $10.00 |

8. Plaintiff Tim Gideon was hired by the Sheriff's Department on or about February 8, 1994, as a deputy sheriff and he is still employed in that capacity. During his employment with the Sheriff's Department, Plaintiff Gideon has earned the following hourly wages:

| | |
|---|---|
| 1994 | $7.80 |
| 1995 | $8.75 |
| 1996 | $9.75 |
| 1997 | $10.00 |
| 1998 | $10.50 |

9. Plaintiff William Heagerty was hired by the Sheriff's Department on or about November 16, 1994, as a jailer. In April, 1996, he became jail administrator. His employment with the Sheriff's Department terminated on December 31, 1996. During his employment with the Sheriff's Department, Plaintiff Heagerty earned the following hourly wages:

| | |
|---|---|
| 1994 | $6.00 |
| 1995 | $7.25 |
| 1996 | $8.00 |

At his termination, Plaintiff Heagerty received payment for 64.49 hours which were his "comp time hours that [were] left."

10. Plaintiff William Heinzl was hired by the Sheriff's Department on or about February 1, 1990, as a deputy sheriff and he is still employed in that capacity. During his employment with the Sheriff's Department, Plaintiff Heinzl has earned the following hourly wages:

| | |
|---|---|
| 1993 | $8.40 |
| 1994 | $8.75 |
| 1995 | $9.25 |
| 1996 | $9.75 |
| 1997 | $10.00 |
| 1998 | $11.00 |

11. Plaintiff Al Kinser was hired by the Sheriff's Department on or about January 1, 1991, as a deputy sheriff. His employment terminated October 10, 1997. During his employment with the Sheriffs Department, Plaintiff Kinser earned the following hourly wages:

| | |
|---|---|
| 1993 | $8.40 |
| 1994 | $8.75 |
| 1995 | $9.25 |
| 1996 | $9.75 |
| 1997 | $10.00 |

12. Plaintiff Alan Miller was hired by the Sheriff's Department on or about April 1, 1994, as a deputy sheriff. His employment terminated on or about November 27, 1996. During his employment with the

Sheriff's Department, Plaintiff Miller earned the following hourly wages:

| | |
|---|---|
| 1994 | $7.80 |
| 1995 | $8.75 |
| 1996 | $9.75 |

At the time of his termination, Plaintiff Miller was paid for 262 hours of accrued compensatory and holiday time

13. Plaintiff Jeff Myers was hired by the Sheriff's Department on or about February 8, 1995, as a dispatcher. He became a jailer on or about January 1, 1996, and a deputy sheriff on or about November 1, 1996. He is still employed. During his employment with the Sheriff's Department, Plaintiff Myers has earned the following hourly wages:

| | |
|---|---|
| 1995 | $6.00 |
| July 30, 1995 | $6.75 |
| 1996 | $8.00 |
| 1997 | $9.00 |
| 1998 | $9.25 |

14. Plaintiff Alan Outhouse was hired by the Sheriff's Department on or about January 1, 1989, as a deputy sheriff. His employment terminated on December 11, 1996. During his employment with the Sheriff's Department, Plaintiff Outhouse earned the following hourly wages:

| | |
|---|---|
| 1993 | $8.40 |
| 1994 | $8.75 |
| 1995 | $9.25 |
| 1996 | $9.75 |

15. Plaintiff Tim Rinehart was hired by the Sheriff's Department on or about June 1, 1995, as a dispatcher. He became a deputy sheriff on or about August 29, 1996, and is still employed. During his employment, Plaintiff Rinehart has earned the following hourly wages:

| | |
|---|---|
| 1995 | $6.00 |
| 1996 | $7.00 |
| August 29, 1996 | $7.80 |
| 1997 | $9.00 |
| 1998 | $9.50 |

16. Plaintiff Alan Stuart was hired by the Sheriff's Department on or about April 6, 1996. Plaintiff Stuart was a dispatcher/jailer for three months and then a dispatcher. His employment terminated in April 1997. During his employment with the Sheriff's Department, Plaintiff Stuart earned the following wages:

| | |
|---|---|
| 1996 | $6.00 |
| 1997 | $7.00 |

17. Plaintiff Nina Stults was hired by the Sheriff's Department on or about June 26, 1989, as a dispatcher. Her employment terminated December 31, 1996. During her employment with the Sheriff's Department, Plaintiff Stults earned the following hourly wages:

| | |
|---|---|
| 1993 | $7.00 |
| 1994 | $7.30 |
| 1995 | $7.80 |
| 1996 | $8.30 |

At the time of her termination, Plaintiff Stults received payment for 13.50 compensatory hours which were "all comp hours that are left."

18. Plaintiff Forrest Thompson was hired by the Sheriff's Department on or about June 6, 1994, as a deputy sheriff. His employment terminated on or about October 14, 1996. During his employment with the Sheriff's Department, Plaintiff Thompson earned the following hourly wages:

| | |
|---|---|
| 1994 | $7.80 |
| 1995 | $8.75 |
| 1996 | $9.75 |

19. Plaintiff Hazel Turner was hired by the Sheriff's Department on or about June 25, 1988, as a dispatcher, and is still employed. During her employment with the Sheriff's Department, Plaintiff Turner has earned the following hourly wages:

| | |
|---|---|
| 1993 | $6.40 |
| 1994 | $7.00 |
| 1995 | $7.50 |
| 1996 | $8.20 |
| 1997 | $8.65 |
| 1998 | $8.90 |

20. Plaintiff Vernon Warren was hired by the Sheriff's Department on or about January 1, 1989, as a deputy sheriff. His employment terminated February 28, 1997. During his employment with the Sheriff's Department, Plaintiff Warren earned the following hourly wages:

| | |
|---|---|
| 1993 | $8.40 |
| 1994 | $8.74 |
| 1995 | $9.25 |
| 1996 | $9.75 |
| 1997 | $10.00 |

## B. Defendants

21. Defendant Stone County, Missouri is a county in the third class. Rev.Mo.Stat. § 48.020.

22. The County Commission is composed of three members, styled "commissioners." Rev.Mo.Stat. § 49.010. The presiding commissioner is elected to four-year terms. Rev.Mo.Stat. § 49.020. Prior to 1996, associate commissioners were elected to two-year terms. As of the general election in 1996, associate commissioners are also elected to four-year terms. *Id.*

23. Defendant Tony DeLong was elected to the position of Associate Commissioner of Stone County, Missouri in November, 1992, and has served as a Commissioner since. Since January, 1995, DeLong has held the position of Presiding Commissioner.

24. Defendant Alden Hembree was elected to the position of Associate Commissioner of Stone County, Missouri in November, 1988, and has been continuously reelected since.

25. Defendant Duane Clark was elected to the position of Associate Commissioner of Stone County, Missouri in November, 1994, and held the position for one two-year term.

26. Each county elects a county clerk every four years. Rev.Mo.Stat. § 51.020. The county clerk keeps an accurate record of commission proceedings. Rev.Mo.Stat. § 51.120. The clerk is also required by law to keep the necessary records and collect contributions from county employees for social security purposes. Rev.Mo.Stat. § 51.165.

27. Defendant Carolyn Dean was elected to the office of County Clerk of Stone County, Missouri in November, 1986, and has been continuously reelected since.

28. A county sheriff is elected every four years. Rev.Mo.Stat. § 57.010.

29. Defendant Lonnie Mease was elected to the position of Sheriff of Stone County, Missouri in 1988, and held that position for two terms until December 31, 1996.

30. Defendant Richard Hill was elected to the position of Sheriff of Stone County, Missouri in November, 1996. He took office on December 31, 1996, and currently holds that office. He had previously worked for the Stone County Sheriff's Department as Chief Deputy beginning February 7, 1994.

31. The Stone County Sheriff's Department is a small department. It currently employs 35 employees—nineteen sheriff's deputies, six dispatchers, a jail administrator, and nine correctional officers.

32. As County Clerk, Defendant Dean does not have the authority to do, and has not done, any of the following acts with regard to deputy sheriffs or other Sheriff's Department employees:

 a. appoint;

 b. evaluate or otherwise review job performance;

 c. discipline;

 d. discharge;

 e. transfer;

 f. schedule;

 g. set wage rates;

 h. grant pay increases or decreases;

 i. change job duties; or

 j. grant days off for sickness, holidays or use of compensatory time.

33 As County Clerk, Defendant Dean does not have the authority to affect the working terms or conditions of any deputy sheriff or Sheriff's Department employee.

34. As County Clerk, Defendant Dean has absolutely no control over the scheduling of overtime for sheriff's deputies and other Sheriff's Department employees.

## C. Employment of Deputy Sheriffs and Other Sheriff's Department Employees

35. The fiscal year of a county commences on January first and terminates on the thirty-first day of December in each year. Rev.Mo.Stat. § 50.010.

36. The county clerk is the budget officer in class three counties. Rev.Mo.Stat. § 50.530(2)

37 On or before January 15th of each year, each county office holder must prepare and submit to the budget officer an estimated budget. Rev.Mo.Stat. § 50.540.

38. The budget officer then prepares the budget and transmits it to the County Commission no later than February first. Rev.Mo.Stat. § 50.540.

39. The County Commission may revise the budget submitted by the budget officer. Rev.Mo.Stat. § 50.740.

40. Missouri law requires a County Commission to balance its budget; the County may not run a deficit. Missouri Revised Statute § 50.610 requires:

> After the budget hearings, the county commission may revise, alter, increase or decrease the items contained in the budget and may eliminate any item or add new items. If it increases the total proposed expenditures from any fund so that the total proposed expenditures exceed the total estimated income, it shall also make provision for the necessary additional income so that the budget adopted shall provide revenue at least equal to expenditures for each fund.... At the same time, the county commission shall tentatively fix the tax rate necessary to balance the budget. ·

The budgetary requests of all county officials, including Sheriff, are subject to the final authority of the county commission and its responsibility to balance the budget.

41. As part of the budget process, the County Commission meets with each county officeholder regarding his or her budget. Under Missouri law, it is the duty of Stone County to pay the salaries of Sheriff's deputies. Missouri Revised Statute § 57.230 provides:

> The County shall pay the salaries, in the amount approved by a majority of the circuit judges of the circuit court, of each deputy appointed by the sheriff and approved by a majority of the circuit judges of the court.

42. Pursuant to Rev.Mo.Stat. § 57.250, the Circuit Judge of the county determines the number of sheriff's deputies and other Sheriff's Department employees. The Circuit Judge also determines the compensation of sheriff's deputies and other Sheriff's Department employees. Missouri Revised Statute § 57.250 provides:

> The sheriff ... shall be entitled to such number or deputies and assistants, to be appointed by such official, with the approval of a majority of the circuit judges of the circuit court, as such judges shall deem necessary.... Such judges of the circuit court, in their order permitting the sheriff to appoint deputies or assistants, shall fix the compensation of such deputies or assistants.

43. As part of the budget process, the Stone County Commission sets wage guidelines for sheriff's deputies and other Sheriff's Department employees. If the Sheriff contests the wage guidelines set by the County Commission, the Circuit Judge for Stone County sets the wages. The Circuit Judge has final authority to set wages for all Sheriff's Department employees.

44. In practice, through at least the 1995 fiscal year, the Stone County Commission set the salaries for each deputy, dispatcher, and jailer. During this period the Commission also determined how many deputies, dispatchers, and jailers were hired.

45. The Commission had told Sheriffs Mease and Hill that it would not pay employees of the Sheriff's Department overtime. Mease and Hill have both petitioned

the Commission to change this policy several times.

46. The Stone County Sheriff does not control the funds with which deputies are paid nor can the Sheriff force the County to pay overtime. It is also beyond the Sheriff's authority to order the Circuit Judge or the Commission to pay deputies overtime.

47. During the budget process for 1998, Sheriff Richard Hill rejected the wage guidelines recommended by the County Commission for Sheriff's Department employees. The wages for 1998 were set by Judge Ed Sweeney, Circuit Judge for Stone County, Missouri. Judge Sweeney set some rates higher than those proposed by the County Commission.

48. The time cards of Sheriff's Department employees are provided to the Sheriff who directs the preparation of pay vouchers which show the total number of hours worked in the pay period. The time cards and pay vouchers are signed by the Sheriff and transmitted to the County Clerk's office.

49. The County Clerk's office reviews the time cards and pay vouchers of Sheriff's Department employees only to determine if hours have been accurately accounted as holiday leave, sick leave or compensatory time and if the addition is correct. The County Clerk's office then prepares paychecks for the Sheriff's Department employees, as well as all other county employees, with the appropriate deductions.

50. The time cards and pay vouchers are maintained in the County Clerk's office.

51. Without consulting the Sheriff, the County unilaterally: changed the pay period for the Plaintiffs from two weeks to four weeks; attempted to enforce new lunch hour regulations; and altered its holiday policy.

52. During the tenures of Sheriff Mease and Sheriff Hill, the Stone County Commission and the individual commissioners have not had the authority to do any of the following acts with regard to deputy sheriffs or other Sheriff's Department employees:

a. appoint;

b. evaluate or otherwise review job performance;

c. discipline;

d. discharge;

e. transfer;

f. schedule;

g. set final wage rates;

h. grant pay increases or decreases;

i. change job duties;

j. schedule days off for sickness, holidays or use of compensatory time.

53. During the tenures of Sheriff Mease and Sheriff Hill, the Stone County Commission and its individual members have had absolutely no control over the scheduling of overtime for sheriff's deputies and other Sheriff's Department employees.

54. Sheriffs have statutory authority to appoint deputy sheriffs and assistants. Mo.Rev.Stat. § 57.250. The Sheriff "may at any time discharge any deputy or assistant and may regulate the time of such person's employment."

55. The Sheriff has sole authority to hire Sheriff's Department employees.

56. The Sheriff has sole authority to fire Sheriff's Department employees. When Sheriff Hill took office in December, 1996, he discharged some personnel.

57. The Sheriff has sole authority to discipline Sheriff's Department employees.

58. The Sheriff has sole authority to transfer employees from one position.

59. All scheduling of Sheriff's Department employees is done by the chief deputy and sergeants. No one outside the department is responsible for scheduling.

60. No one outside the Sheriff's Department is responsible for scheduling overtime.

61. The sheriff's deputies can perform any duty of the Sheriff subject to the Sheriff's direction.

62. A Sheriff is often considered responsible for anything a deputy does.

63. Sheriffs Mease and Hill did not personally supervise the activities of these Plaintiff employees.

64. Hill's Chief Deputy, Wayne Neeley, attends to the day to day supervision of the office. Hill, prior to be elected Sheriff, was the Chief Deputy for Mease and attended to these same duties.

65. In the Sheriff's office it was the Chief Deputies responsibility to schedule the employees work shifts, to take their grievances, and to make adjustments to their schedules. Employees also directed their requests for overtime, compensatory time, and time off to the Chief Deputy.

66. Sheriffs Mease and Hill never scheduled meetings with their deputies to discuss official office policy or practice. The Plaintiffs were not part of the Sheriffs' command staffs. Nor did the Sheriffs ever request that any of the Plaintiffs represent them before the County Commission or in any other official capacity.

67. All of the Plaintiffs testified that if a question arose regarding the performance of their duties they consulted the Chief Deputy and not the Sheriff. With the exception of Bill Heinz, who works in Internal Affairs, none of the Plaintiffs saw or were exposed to confidential materials about the setting of office policies or discipline. Heinz may see discipline complaints and occasionally performs an investigation on these complaints, but he does not recommend or take part in decisions concerning the discipline of other officers.

68. Plaintiffs Janie Beck, Stults, Heinzl, and Heagerty have all held supervisory positions within the Sheriff's Department.

69. While Mease was Sheriff, many of the Plaintiffs who worked for the Sheriff's Department would not see or have contact with him for weeks at a time.

70. The Plaintiffs who worked the night shifts as dispatchers, deputies, and jailers had very little contact with either Mease or Hill and often would not see them for weeks at a time.

71. On April 27, 1989, Stone County adopted personnel policies and provisions for all county employees including the Sheriff's Department. These regulations set holidays, the number of sick days, various benefits, provisions for a forty-hour work week for all employees, and a paid lunch time for all employees of the County. The 1989 policy required all full-time employees of the County to work a forty-hour week. Compensatory time was awarded for each hour worked in excess of forty hours a week. The 1989 policy was followed by the County.

72. In 1991, the Stone County Commission was sued in the Circuit Court of Stone County, Missouri for unpaid overtime by a Stone County deputy sheriff in a case styled *Ronald F. Weber v. Stone County, et al.*, Case No. CV591–18CC. The plaintiff alleged that the personnel policy in effect at that time allowed all personnel, including law enforcement personnel, to receive overtime for hours worked in excess of 40 hours per week. The lawsuit was settled.

73. During 1991, the Sheriff's Department was also investigated by the United States Department of Labor, Wage and Hour Division, for FLSA violations. The Wage and Hour Division concluded that overtime violations had occurred with respect to eight Sheriff's Department employees.

74. As a direct result of the lawsuit and investigation, the Stone County Commission and Sheriff Mease sought expert advice regarding overtime policies for the Sheriff's Department. They were advised that the FLSA allows employers of law enforcement personnel to adopt a policy whereby overtime for those employees is incurred only for hours worked in excess

of 171 hours in a 28–day work period. *See* 29 U.S.C. § 207(k).

75. Eager to put this policy into place, the Stone County Commission issued the Stone County Personnel Policies in 1991. The Stone County Personnel Policies were adopted by Sheriff Mease, and copies were provided to all current employees. Copies have also been provided to new hires.

76. The Policies contained an Addendum applicable to the Sheriff's Department of Stone County, which provided:

> The work period/pay period for emergency service personnel of the Stone County Sheriff's Department is 28 days. An employee must work more than 171 hours within the 28 day period to be eligible for compensatory time or overtime pay. All hours worked beyond the 171 hours will be compiled at 1.5 times the number of hours worked beyond the limit. The Sheriff and the Stone County Commission retain the right to determine how hours worked beyond the limit of 171 hours will be compensated (by either being paid compensation or compensatory time off). Employees can accrue a maximum of 480 hours of compensatory time.

This provision will be referred to as the "Section 207(k) Policy."

77. Following his election, Sheriff Hill continued the Section 207(k) Policy.

78. Since 1991, the County Clerk has calculated overtime for law enforcement personnel based on the Section 207(k) policy.

79. Since 1991, the Clerk of Stone County has kept all employee records, including all records required to pay employees of the Sheriff's department. Even if the Sheriff or deputy request payment for overtime the Commission Clerk would not issue such a check.

80. Plaintiffs Janie Beck, Jimmy Beck, Bolin, Branstetter, Carr, Doucey, Gideon, Heagerty, Kinser, Miller, Outhouse, Stuart, Stults, Thompson, Turner, and Warren signed acknowledgments that they received the Stone County Personnel Poli-cies. Plaintiffs testified they did not recall whether they received the Addendum but there is no reason to believe they did not.

81. Since 1991, the Stone County Sheriff's Department has had in place a valid Section 207(k) Policy for its law enforcement personnel

82. With the Section 207(k) Policy in place, Plaintiffs had an understanding they would receive compensatory time for overtime hours rather than pay. The Policy as written gave the Sheriff and Commission discretion to decide how overtime would be compensated. The practice for years has been that compensatory time is awarded for overtime and none of the Plaintiffs complained about the system to Defendants County or Dean. Finally, there is evidence that Plaintiffs were advised at hiring that they would receive comp time for overtime hours worked.

83. With regard to calculating overtime, all Sheriff's Department employees are paid for 160 hours in a 28–day work period. If they work less than 160 hours, they must use accrued time off or holiday time to make up the difference. If they work more than 160 hours, the extra time is allocated to a "bank".

84. For dispatchers, who are the only non-law enforcement Plaintiffs, overtime is allocated to a "comp bank" at time-and-a-half. Dispatchers earn compensatory time for each hour worked in excess of 40 hours per week.

85. Since jailers and sheriff's deputies are law enforcement personnel subject to the Section 207(k) Policy, hours worked in excess of 171 are allocated to a comp bank at time-and-a-half. Hours worked between 160 and 171 are allocated to a "straight time bank" one for one.

86. Additionally, all Sheriff's Department employees are awarded 96 holiday hours each year to be used at their discretion. These hours are kept in a "holiday bank".

87. When a law enforcement officer works less than 160 hours in a 28–day

work period or a dispatcher works less then 40 hours in a 7–day work period, the difference is subtracted from one of his or her time banks. The time can be subtracted from the officers straight time bank, compensatory time bank, or holiday time bank.

88. Based on calculations performed by Defendant Dean, which the court finds to be credible, none of the Plaintiffs whom are currently employed have comp time hours exceeding 480, which is the maximum number allowed by law.

89. In this case, the sheriff's deputies and jailers are in a "public safety activity," 29 C.F.R. § 553.24(C), and the dispatchers perform "emergency response activities," 29 C.F.R. § 553.24(d). Such employees may accrue up to 480 hours of compensatory time. 29 U.S.C. § 207(*o*)(3)(A).

90. It is creditable that Officer Gary Carr spends an average of 5 .5 hours per week on activities relating to the care of the County's drug dog.

## II. CONCLUSIONS OF LAW

This case raises a variety of issues concerning compensation for overtime work and the FLSA. First, the Court must determine whether the Plaintiffs are covered by the FLSA. The Defendants argue that they do not qualify as "employers" under the FLSA and that the Plaintiffs do not qualify as "employees" under the Act because they serve as personal staff to the Stone County Sheriff. Second, if the Plaintiffs are covered by the FLSA the Court must determine if they have been properly compensated for overtime hours works. This issue contains three sub-issues: (1) when do the Plaintiffs accrue overtime hour (does § 207(k) of the FLSA apply to the Plaintiffs); (2) how must Plaintiffs be compensated for overtime hours worked (does § 207(*o*) of the FLSA apply to the Plaintiffs); and (3) if Plaintiffs are entitled to compensatory time for overtime hours worked, how should the Plaintiffs total compensatory time banks be calculated. This case also presents the

related issues of whether the FLSA's two or three year statute of limitation should be applied and whether the Defendants willfully violated the FLSA. Finally, this case raises the issues of qualified immunity as it applies to officials acting in their individual capacity. The Court addresses these issues in turn.

### A. Threshold Issues Under FLSA

Plaintiffs hold the initial burden of proving that an employer-employee relationship existed between them and the Defendants. *See Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir.1993) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946); *Marshall v. Truman Arnold Distrib. Co., Inc.*, 640 F.2d 906, 911 (8th Cir.1981)). As a practical matter, Defendants do not dispute that the Plaintiffs worked for the Stone County Sheriff's Department. The FLSA, however, uses specific definitions of employer and employee. Consequently, the Court begins by considering whether the Defendants were "employers" of the Plaintiffs as defined by the FLSA. Second, if the Defendants were employers of the Plaintiffs the Court must consider whether the Plaintiffs meet the FLSA's definition of "employees."

### 1. Whether Defendants are "Employers" Under the FLSA

The FLSA itself is the starting point for the analysis. Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). An employee is "any individual employed by an employer," 29 U.S.C. § 203(e)(1) and, "[i]n the case of an individual employed by a public agency," employee means any "individual employed by a State, a political subdivision of a State, or an interstate government agency." 29 U.S.C. § 203(e)(2)(C). "Employ" is defined under the FLSA as "to suffer or

permit to work," 29 U.S.C. § 203(g), and the FLSA contemplates that an employee may have more than one employer responsible for its provisions. *E.E.O.C. v. State of Missouri, Department of Soc. Serv.,* 617 F.Supp. 1152, 1158 (E.D.Mo.1985) (citing *Donovan v. Agnew,* 712 F.2d 1509, 1509–10 (1st Cir.1983); *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983)).[1] Courts are to construe the terms "employee" and "employer" expansively. *See e.g. Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 1350, 117 L.Ed.2d 581 (1992); *Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 296, 105 S.Ct. 1953, 1959, 85 L.Ed.2d 278 (1985); *United States v. Rosenwasser,* 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301 (1945) ("[a] broader or more comprehensive coverage of employees within the stated categories would be difficult to frame").

■ Courts have worked to add substance to the FLSA's vague terms to ensure that an employment relationship exists in fact before the FLSA applies. *Brickey v. County of Smyth, Virginia,* 944 F.Supp. 1310, 1315 (W.D.Va.1996). The Supreme Court has indicated that courts should apply an "economic realities" test to determine whether an employment relationship exists. *Tony & Susan Alamo,* 471 U.S. at 301, 105 S.Ct. at 1961; *Goldberg v. Whitaker House Cooperative, Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6

L.Ed.2d 100 (1961). Merely labeling the individual as employee or independent contractor is not dispositive. *Donovan v. Tehco, Inc.,* 642 F.2d 141, 143 (5th Cir. 1981). Although courts do not apply the traditional common law analysis to distinguish between "employees," to whom the Act applies, and "independent contractors," to whom it does not, *Secretary of Labor v. Lauritzen,* 835 F.2d 1529, 1534 (7th Cir.1987), *cert. denied,* 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988); *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043 (5th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987), courts have derived different multi-factor tests to determine whether defendants are employers under the FLSA.[2]

■ Whether counties or municipal subdivisions are "employers" of sheriffs' deputies presents somewhat of a difficult question for FLSA analysis. Sheriffs' deputies are not independent contractors. They are employees. The question remains, however, who is their employer: the sheriff, the county, or the State? Courts have borrowed from independent contractor analysis to determine whether a sufficient employment relationship exists between county and deputies. *See Barfield v. Madison County, Miss.,* 984 F.Supp. 491, 497 (S.D.Miss.1997); *Brickey,* 944 F.Supp. at 1315; *Keenan v. Allan,* 889 F.Supp. 1320, 1381 (E.D.Wash.1995), *aff'd,* 91 F.3d 1275

---

1. *See also Brickey v. County of Smyth, Virginia,* 944 F.Supp. 1310, 1315 (W.D.Va.1996) (citing *Shultz v. Falk,* 439 F.2d 340, 345 (4th Cir.1971); *Mid–Continent Pipe Line Co. v. Hargrave,* 129 F.2d 655 (10th Cir.1942)).

2. In this context, the Eastern District of Missouri has developed a six factor test: (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business. *Lauritzen,* 835 F.2d at 1535. The Court may not make its determination based on one particular factor, but rather must look to all the circumstances of the work activity. *Lauritzen,* 835 F.2d at 1534, citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1476, 91 L.Ed. 1772 (1947). Moreover, "the factors are not exhaustive, nor can they be applied mechanically to arrive at a final determination of employee status." *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d at 1043. *Dole v. Amerilink Corp.,* 729 F.Supp. 73, 76 (E.D.Mo.1990).

(9th Cir.1996).[3] An employer under the Act is someone who (1) has the power to hire and fire the employee, (2) supervises and controls the employee's work schedule or conditions of employment, (3) determines the rate and method of payment, and (4) maintains employment records. *Id.*

■ The Eighth Circuit has adopted similar standards for determining whether an employment relationship exists. "Courts have looked to factors such as the control of hiring and firing of employees, control of the manner in which work is performed, and the fixing of employee wages in determining who is the 'employer.'" *Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799, 802–03 (E.D.Ark.1990) (citing *Wirtz v. Pure Ice Company,* 322 F.2d 259 (8th Cir.1963); *Fruco Const. Co. v. McClelland,* 192 F.2d 241 (8th Cir.1951)). Consistent with the purpose of the four factor test, no one factor is dispositive, but instead a court must consider the economic realities and the circumstances of the whole activity. *Brickey,* 944 F.Supp. at 1315 (citations omitted). Accordingly, the Court applies these four factors to this case.

### a. Power to hire and fire

The Sheriff of Stone County has the sole authority to hire and fire deputies, dispatchers, jailers, and all other Sheriff's Department personal. Mo.Rev.Stat. § 57.250. The Sheriff does not have the authority to simply hire any number of deputies he or she desires. The Circuit Judge in Stone County must approve the number of deputies which the Sheriff may hire. Once the number of deputies is determined, or once it is determined that the Sheriff may hire an additional deputy, the decision of who to hire is left solely to Sheriff.

### b. Supervises and controls the employee's work schedule and conditions of employment

The Sheriff of Stone County also controls, or is ultimately responsible for, the day to day activities and duties of the deputies, dispatchers, jailers, and other Sheriff's Department personal. The evidence presented at trial demonstrates that the Sheriff directs the manner in which the Plaintiffs perform their daily activities. The Sheriff is also responsible for scheduling when the Plaintiffs worked, although this activity is frequently performed by the Chief Deputy.

The Stone County Commission, however, does influence the scheduling of deputies. *Barfield,* 984 F.Supp. at 497 (finding that "although Madison County lacks the power to hire and fire, the County has some control in this area by allocating funds to the Sheriff to operate his department."). Evidence was presented at trial that Sheriffs Mease and Hill repeatedly requested authorization from the Stone County Commission to pay their deputies for overtime. This request was repeatedly denied. Such behavior on the part of the County Commission certainly had an impact on the scheduling of Sheriff's Department employees and the conditions under which they worked.

### c. Determines rate and method of payment

Pursuant to Missouri Revised Statute § 57.230: "The county shall pay the salaries, in the amount approved by a majority of the circuit judges of the circuit court, of each deputy appointed by the sheriff and approved by a majority of the circuit judges of the court." Consequently, while the Stone County Commission is ultimately responsible for paying the Sheriff's Department employees, it is the Stone County Circuit Judge who has the final say on the deputies rate of pay. The Stone County Commission sets wage guidelines for

---

**3.** Courts have applied this four part test in different contexts. *Hale v. Arizona,* 967 F.2d 1356 (9th Cir.1992) (citing *Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir.1983)), *cert. denied,* 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993).

deputies and other Sheriff's Department employees. If the Sheriff contests the wage guidelines set by the County Commission, the Circuit Judge for Stone County sets the wages. During the budget process for 1998, Sheriff Richard Hill rejected the wage guidelines recommended by the County Commission for Sheriff's Department employees. The wages for 1998 were set by Judge Ed Sweeney, Circuit Judge for Stone County Missouri.

In practice, at least through the 1997 fiscal year, the Stone County Commission set the salaries for each deputy, dispatcher, and jailer. During this period the Commission also determined how many deputies, dispatchers, and jailers were hired. The Commission had told Sheriffs Mease and Hill that it would not pay employees of the Sheriff's Department overtime. Mease and Hill have both petitioned the Commission to change this policy several times. The Stone County Sheriff does not control the funds with which deputies are paid nor can the Sheriff force the County to pay overtime. It is also beyond the Sheriff's authority to order the Circuit Judge or the Commission to pay deputies overtime. From the evidence presented at trial it is evident that the Stone County Commission has played a significant part in setting the Sheriff's Department budget in Stone County. It is also clear that in most years the Commission has had the final word on what the budget would be.

#### d. Maintains employment records

The Clerk of the Stone County Commission kept track of all employee time sheets and payment records. The time cards of the Sheriff's Department employees are provided to the Sheriff by the Clerk of the County Commission. The Sheriff directs the preparation of pay vouchers which show the total number of hours worked in the pay period. The time cards and pay vouchers are signed by the Sheriff and transmitted to the County Clerk's office. The County Clerk reviews the time cards. The Clerks determines if the hours have been accurately accounted for including

time worked, holiday leave, sick leave, and compensatory time.

The Clerk has also made the determination, in the past, that the County would not reimburse employees for certain recorded time. The Clerk determined that deputies would not be reimbursed for certain lunch breaks taken. This determination was made without consultation of the Sheriff and the policy was later abandoned. Also without consulting the Sheriff, the County changed the Sheriff's Department's pay period from two weeks to four and altered its holiday policy. The Clerk's office prepares paychecks for all Sheriff's Department employees and makes all appropriate deductions. The time cards, pay vouchers, and all time records are maintained by the Clerk's office.

#### e. Conclusion: Defendants Stone County Commission and Sheriffs Mease and Hill are Co-employers of Plaintiffs

In conclusion, the Court finds that the Stone County Commission and Sheriff are joint employers of the Plaintiffs in this case. *See Barfield,* 984 F.Supp. at 499 (concluding that both Sheriff and County were co-employers of Sheriff's deputies under similar facts). Although this case has resulted in the Stone County Commission and the Stone County Sheriff being named as co-defendants, it is clear that these parties have been antagonistic for years. The County complains that only the Sheriff is responsible for scheduling the Plaintiffs, and the Sheriff complains that the County requires the Sheriff to perform specific duties and then limits the number of personal which can be hired and the number of hours which those personal can work by refusing to pay overtime.

Under Missouri law each county commission is required to operate the county with the revenue available to them. Mo. Rev.Stat. § 50.610. The county budget "shall provide revenue at least equal to expenditures for each fund." *Id.* In Missouri neither the state nor counties may operate with budget deficits. It is not

practical or feasible under Missouri's system of government to allow any office holder to spend any amount of money he or she deems necessary to run his or her office. It would not be wise to allow county sheriffs or other office holders to operate without requiring the county commission to approve their budget. The Commission can tie the hands of the Sheriff with the purse strings of the County, which only it can control. Moreover, the evidence shows that the Commission convinced Sheriff Mease that he had to adopt their 1991 employment policy. Consequently, the Court concludes that due to its budgetary authority and ability to virtually "shut down" the Sheriff's Department, the members of the Stone County Commission, in their respective official capacities, are employers of the Plaintiffs. The Court, however, also concludes that the Stone County Sheriff, due to his or her ability to exercises almost exclusive control over the daily activities and schedules of the Plaintiffs, is an employer of the Plaintiffs. Therefore, Stone County is potentially liable for the payment of overtime as the employer of the Plaintiffs (1) due to the status of the Sheriff in his official capacity as their employer, and (2) due to the status of the members of the Commission in their official capacities as the employers of the Plaintiffs.

### 2. Whether Plaintiffs are "Employees" Under the FLSA

■ The second threshold issue is whether the Plaintiffs are "employees" under the FLSA. Section 203(e)(1) states that "Except as provided in paragraphs (2), (3), and (4) the term 'employee' means any individual employed by an employer." Courts are to construe the term "employee" expansively. *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. at 318, 112 S.Ct. at 1350. As noted above, the Court has concluded that the Plaintiffs are employed by the County Commission and the Sheriff of Stone County, Missouri. While the Defendants do not dispute that the Plaintiffs fall within the general defini-

tion of "employee" under the § 203(e)(1), they do contend that the Plaintiffs fall within one of the exceptions to this definition. The term "employee" as used in the FLSA does not include individuals selected by an officeholder to be "a member of his personal staff." 29 U.S.C. § 203(e)(2)(C)(II). Defendants argue that the Plaintiffs were all members of Sheriffs Mease and Hill's personal staffs and, therefore, the Plaintiffs are not employees covered by the FLSA.

### a. Guidance from the Department of Labor

The FLSA does not define the term "personal staff," but the Secretary of Labor promulgated a regulation which provides:

> The statutory term "member of personal staff" generally includes only persons who are under the direct supervision of the selecting official and have regular contact with such official. The term typically does not include individuals who are directly supervised by someone other than the elected official even though they may have been selected by the official.

29 C.F.R. § 553.11(b). Moreover, the Secretary of Labor has consistently argued that sheriffs' deputies are not the personal staff of the elected sheriff. *See Nichols v. Hurley*, 921 F.2d 1101 (10th Cir.1990) (Secretary of Labor filed amicus curiae brief on behalf of plaintiff deputies).

Specifically, in interpreting the FLSA, the Department of Labor (DOL) has rejected the view that sheriffs' deputies are the personal staff of Sheriffs. In an opinion letter written in July 1985, the DOL specifically addressed this issue. The DOL expressed the view that deputy sheriffs preforming law enforcement activities were clearly performing functions of an established unit of local government and did not qualify as the personal staff of the elected sheriff. 6 Wage and Hour Manual (BNA) ¶ 91:404 (citing WH Adm.Op. July

12, 1985). The following year the DOL broadened its opinion. The department found that appointees (specifically, sheriff's deputies) who serve as functional employees of an office holder (the sheriff) in discharging "official" duties of the office are not personal staff. 6 Wage and Hour Manual (BNA) ¶ 91:404 (citing WH Adm. Op. March 10, 1986).

### b. Relevant case law

█ The case law is not as one-sided in its support that sheriffs' deputies are not the personal staff of the elected sheriff. Courts, however, have consistently recognized that the personal staff exception to the FLSA should be construed narrowly against the employer. *See, e.g., Reich v. State of New York*, 3 F.3d 581, 586 (2d Cir.1993), *cert. denied*, 510 U.S. 1163, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994); *Nichols*, 921 F.2d at 1103.[4] The personal staff exception is a question of federal law, with state law only relevant as it defines the plaintiff's position and duties. *Calderon v. Martin County*, 639 F.2d 271, 273 (5th Cir.1981).

This Court's research and the parties' briefs indicate that only the Fourth Circuit and the Tenth Circuit have considered whether sheriffs' deputies fall within the personal staff exception of the FLSA. Both Circuits have refused to state as a matter of law that sheriffs' deputies are always part of a sheriffs' personal staff or are never part of a sheriffs' personal staff. These courts agree that one must look to the "nature and circumstances" of each employment relation to determine whether the personal staff exception applies. The Circuits, however, are otherwise split in their approach to the issue.

In a series of three cases the Fourth Circuit considered whether sheriff's department employees were the personal staff of the sheriff.[5] The first case involved a female deputy sheriff who worked as a dispatcher-matron, then a records clerk, and then a secretary. She sought and was denied positions as a road deputy and a detective, and later was fired. *Curl v. Reavis*, 740 F.2d 1323, 1325 (4th Cir. 1984). The plaintiff brought suit for sex discrimination under Title VII, and the court, after a trial to the bench, entered judgment in her favor. The defendants appealed, asserting that the plaintiff was not an "employee" under Title VII. *Id.* at 1324–25.

The court began its analysis by noting that the only exception to the definition of an employee at issue was that for personal staff "[s]ince a North Carolina deputy sheriff is not an elected official, and there is no evidence whatsoever that plaintiff was ever called upon to make policy for the Sheriff's Department or to act as an immediate adviser to the Sheriff with respect to his constitutional or legal powers." Id. at 1328.

The court continued:

Whether Curl is to be treated as a member of the Sheriff's personal staff requires a careful examination of the nature and circumstances of her role in the Sheriff's Department. Though Curl, like all deputies, served at the pleasure of the Sheriff, her position was created and her compensation paid by the county pursuant to state law. There is no evidence that her working relationship with Sheriff Reavis was "highly intimate and sensitive." She was not under his

4. Inasmuch as the definition of "employee" under the FLSA is essentially identical to that under Title VII, many courts have looked to both the legislative history of Title VII and cases interpreting the "personal staff" exception under Title VII for guidance. *See Nichols*, 921 F.2d at 1103; *Brewster v. Barnes*, 788 F.2d 985, 990 n. 7 (4th Cir.1986). In the Title VII context, courts have consistently noted

that it is clear from the legislative history of Title VII that the exemption was intended to be "construed narrowly." Joint Explanatory Statement of Managers at the Conference on H.R.1746, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 2137, 2179, 2180.

5. The Court takes its analysis of these cases directly from *Nichols*, 921 F.2d at 1105–08.

personal direction, and she brought her promotion requests before his subordinate. Curl did not occupy a high position within the chain of command, and her duties were primarily clerical and secretarial. . . . We cannot conclude that Curl was a member of the Sheriff's personal staff. . . .

*Id.* (citations omitted).

In the next two cases, the Fourth Circuit mixed into its analysis of the personal staff exception elements from two of the other exceptions: people appointed by an officeholder to serve on a policymaking level and immediate advisers to an officeholder with respect to the constitutional or legal powers of his office.

In *Brewster v. Barnes,* the plaintiff brought claims under Title VII and the Equal Pay Act, as well as 42 U.S.C. § 1983. The district court ruled in favor of defendants under Title VII on the ground that they were not guilty of intentional discrimination, and ruled that the plaintiff could not recover under the Equal Pay Act because she was a member of the sheriff's personal staff and, therefore, not an "employee" under that act. *Brewster,* 788 F.2d at 989.

The Fourth Circuit noted that statutorily, there was no significant difference between the relationship of sheriffs and deputies in *Brewster* and in *Curl:* the sheriff had the authority to hire, fire, and supervise his deputies; the deputies could "discharge any of the official duties of their principal;" and state courts had described the deputies as "one and the same as the sheriff." *Id.* at 990 (citations omitted). The court evaluated the application of the personal staff exception as follows:

> From 1975 to 1979 Brewster . . . did not occupy an intimate or high level position in the Sheriff's Department, nor did she make policy decisions. Rather, she performed the same functions as the other correctional officers at the jail: handling, transporting, and supervising prisoners; searching visitors; and various jobs such as recordkeeping, cooking,

and cleaning. In short, under the rationale of Curl, Brewster was not a member of [the Sheriff's] personal staff.

*Id.* at 990–91.

In *United States v. Gregory,* 818 F.2d 1114 (4th Cir.), *cert. denied,* 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987), the government brought suit against the Sheriff of Patrick County, Virginia for violating Title VII by failing to employ women in certain deputy positions. "Patrick County is a sparsely populated, rural county, with a relatively large land area. The sheriff is elected, and his department consist of twenty-three individuals, including 'sworn officers' or deputies." *Id.* at 1115. The eighteen deputies in the department were divided into seven different classes: supervisor (2); investigator (2); road deputy (4); court security officer (2); correctional officer (5); process server (1); and "clerk-steno" matron (2). *Id.*

The district court had concluded that the road deputy position was a personal staff position but that the correctional officer and courtroom security officer positions were not. *Id.* at 1116. The basis for the district court's ruling with respect to the road deputy position was that a road deputy "is the 'alterego and personification of the sheriff in the geographical area to which he is assigned. . . . They are the eyes and ears of the sheriff, not only for matters which fall within their official sphere but also as to matters political.'" *Id.*

In evaluating the district court's conclusion with respect to road deputies, the Fourth Circuit looked at its earlier precedent in *Curl* and *Brewster.* Of its decision in *Curl,* the court said:

> The opinion lists many reasons for the finding [that the plaintiff was not on the personal staff]: (1) the plaintiff was not called upon to make policy for the sheriff's department, nor to act as an immediate advisor to the sheriff with respect to his constitutional or legal powers; (2) Congress intended for the exemption to

be construed narrowly, to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official; (3) the plaintiff's position was created and compensated by the county pursuant to state law; (4) her working relationship with the sheriff was never 'highly intimate or sensitive;' (5) she did not occupy a high position within the chain of command, and her duties were primarily clerical and secretarial; and (6) she was not under the sheriff's direction. *Id.* at 1117. The court also commented on its decision in *Brewster,* saying:

> We concluded that the close relationship which had formerly existed had ended once the plaintiff assumed the position at the jail. Thus, because the plaintiff did not occupy an intimate or high level position, and because she did not render advice in formulating policy decisions, she was not a member of the sheriff's personal staff.

Id. at 1117.

Applying the rationale of these two cases to the one before it, the Fourth Circuit concluded:

> [W]e cannot say as a matter of law that the deputy position falls within the personal staff exception to the coverage of Title VII. The road deputies in Patrick County function primarily as typical policeman [sic] who administer the laws and 'policies' of their supervisors. There is no evidence that the road deputies are called upon to render advice to the sheriff respecting his policy decisions or the proper exercise of his powers. The road deputy position in Patrick County is not one high within the chain of command, nor do these road deputies occupy a highly intimate and sensitive status vis-avis the sheriff. The fact that Patrick County is rural and concomitantly employs a rather small police staff does not by itself render the position of road deputy within the sheriff's personal staff. Although we could assume that, with a small deputy contin-

gent, the relationship between the deputies and the sheriff might be close, the appellee has simply failed to show that that closeness has engendered a highly intimate relationship which influences the making of policy.

*Id.*

Consequently, the Fourth Circuit has developed a test which focuses on the closeness and the intimacy of the relationship between the elected official and the employee in determining whether that person is a member of the official's personal staff. The Fourth Circuit's test has also blurred the lines between the personal staff exception of § 203(e)(2)(C)(ii)(II) and the exceptions listed in § 203(e)(2)(c)(ii)(III) and (IV). Because of this, the Tenth Circuit has developed a different approach to determining whether deputies are the personal staff of a sheriff. In *Nichols* a split panel of the Tenth Circuit declined to adopt the Fourth Circuit's reasoning in *Gregory. Nichols,* 921 F.2d at 1108. The Tenth Circuit concluded that the Fourth Circuit had considered factors that concern two other exceptions to the definition of employee; not the personal staff exception. The Court noted:

> With respect to employees of states or political subdivisions thereof, four separate categories of people are not covered by Title VII or the FLSA: (1) people who are elected officials; (2) people who are chosen by an elected official to be on his personal staff; (3) people who are appointed by an elected official on a policymaking level; and (4) people who are immediate advisers to an elected official regarding his constitutional or legal powers. Thus, a person can be a member of an elected official's personal staff and not be either a policymaker or an immediate adviser with respect to the constitutional and legal powers of the elected official.

*Id.* Accordingly, the Tenth Circuit declined to consider the facts that the deputies did not participate in policy making decisions

with the sheriff nor were hired as immediate advisers regarding the sheriff's constitutional or legal powers. Instead, the Tenth Circuit focused on a list of factors which excluded policy making and advice giving.

■■ The Tenth Circuit concluded that the nonexhaustive list of factors to be considered in evaluating the "personal staff" exception was well articulated in *Teneyuca v. Bexar County,* 767 F.2d 148, 151 (5th Cir.1985). In *Teneyuca,* the plaintiff, an assistant criminal district attorney, brought a Title VII claim against the Bexar County Criminal District Attorney. In determining whether the plaintiff was an employee as defined by Title VII, the court considered whether the plaintiff was a member of the district attorney's personal staff. The personal staff exception listed in Title VII is the same as the one listed in the FLSA. The Fifth Circuit applied the following six factors in determining whether the plaintiff was a member of the defendant's personal staff:

(1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only the elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.·

*Teneyuca,* 767 F.2d at 151. This Court agrees with the Tenth Circuit and the Fifth Circuit that one should consider the *Teneyuca* factors in determining whether plaintiffs are part of an elected official's personal staff. It is inappropriate to consider whether a sheriff's employees make policy decisions or advise him or her on constitutional or legal powers. This Court, however, places a greater emphasis upon the sixth *Teneyuca* factor then the Tenth Circuit did in *Nichols.* Specifically, this Court rejects the assumption that, as a matter of law, "one can assume a certain level of intimacy from the nature of a deputy sheriff's role in a small county." *Nichols,* 921 F.2d at 1111.

Other courts have agreed that the last factor is the most important. *Johnson v. Board of County Comm'rs for County of Fremont,* 859 F.Supp. 438, 443 (D.Colo. 1994). In *Anderson v. City of Albuquerque,* the court held the personal staff exception required an "immediate and personal relationship." *Anderson,* 690 F.2d 796, 801 (10th Cir.1982); *Gregory,* 818 F.2d at 1117 (finding that closeness must engender a "highly intimate relationship"); *Curl,* 740 F.2d at 1328 (noting that position was funded by the county and finding no evidence plaintiff had a highly sensitive or intimate relationship with sheriff); *but see Nichols,* 921 F.2d at 1111 (assuming employment intimacy from nature of deputy sheriff's role in small county).

In *James Owens v. Rush,* 654 F.2d 1370, 1375 (10th Cir.1981), the court observed that Congress wanted the exception "to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official." The court found an undersheriff, second in authority to the sheriff, to be a member of the sheriff's personal staff. The undersheriff admitted he had "a very close working relationship with the sheriff." *Id.* at 1376.[6] The "nature and circumstances" of the employment relationship determine whether the personal staff exception applies. *Id.*

The Commission fails to show how Plaintiffs, as dispatchers, deputy sheriffs, and jailers had intimate employment relationships with Mease or Hill. It is undenia-

---

**6.** In a companion case, *Anne Owens v. Rush,* 636 F.2d 283 (10th Cir.1980), the court allowed a deputy sheriff's Title VII claim to go forward, implying that the deputy sheriff was not a member of the sheriff's personal staff.

ble that the Sheriff exercised considerable control over the Plaintiffs, but the mere fact that the Sheriff had the exclusive power to hire and fire Plaintiffs does not establish the necessary intimate and personal employment relationship which must exist between an elected official and his employees for them to be considered personal staff. *Johnson*, 859 F.Supp. at 443. Sheriffs Mease and Hill did not personally supervise the activities of these Plaintiff employees. Hill's Chief Deputy, Wayne Neeley, attends to the day to day supervision of the office. Hill, prior to being elected Sheriff, was the Chief Deputy for Mease and attended to these same duties. In the Sheriff's office it was the Chief Deputy's responsibility to schedule the employees work shifts, to take their grievances, and to make adjustments to their schedules. Plaintiffs also direct their requests for overtime, comp. time, and time off to the Chief Deputy. Sheriffs Mease and Hill never scheduled meetings with their deputies to discuss official office policy or practice. The Plaintiffs were not part of the Sheriffs' command staffs. Nor did the Sheriffs ever request that any of the Plaintiffs represent them before the County Commission or in any other official capacity. With the exception of Plaintiffs Janie Beck, Stults, Heinzl, and Heagerty, who have all held minor supervisory positions, all of the Plaintiffs are located at that bottom the Sheriff's Department chain of command. All of the Plaintiffs testified that if a question arose regarding the performance of their duties they consulted the Chief Deputy and not the Sheriff. With the exception of Bill Heinz, who works in Internal Affairs, none of the Plaintiffs saw or were exposed to confidential materials about the setting of office policies or discipline. Heinz may see discipline complaints and occasionally performs an investigation on these complaints, but he does not recommend or take part in decisions concerning the disci-

pline of other officers. While Mease was Sheriff, many of the Plaintiffs who worked for the Sheriff's department during that time would not see or have contact with him for weeks at a time. Furthermore, there is no indication that Plaintiffs represented either Mease or Hill in the eyes of the public. Finally, the Court concludes that the actual intimacy of the working relationship between the Stone County Sheriff and the Plaintiffs is insufficient to qualify these Plaintiffs as the personal staff of the Sheriff. Accordingly, Plaintiffs do not fall within the personal staff exception of § 203(e)(2)(c)(ii)(II) and they qualify as "employees" under the FLSA.[7]

## B. Overtime Issues Under the FLSA

Since the Court has determined that the Plaintiffs are covered by the FLSA, it must determine how the Act affects the employment relationship between the Plaintiffs and Defendants. With the passage of the FLSA in 1938, Congress established a comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number. *Lamon v. City of Shawnee, Kansas,* 972 F.2d 1145, 1149 (10th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993). At its inception, the FLSA did not apply to state and local governments. In 1974, Congress extended the FLSA's reach to virtually all state and local government employees. FLSA Amendments of 1974, 29 U.S.C. § 203(d) and (x). But, in 1976, the Supreme Court invalidated the FLSA's extension to state and local governments when those entities were performing traditional governmental functions, including the provision of police protection, ruling in *National League of Cities v. Usery,* 426 U.S. 833, 851–52, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976), that Congress' author-

---

7. Although the Eight Circuit has not undertaken the analysis of whether particular sheriff's deputies are covered by the FLSA, the Eighth Circuit has applies the FLSA to sheriff's deputies. *See Henson v. Pulaski County Sheriff Dept.,* 6 F.3d 531 (8th Cir.1993).

ity under the Commerce Clause was not so broad. *Lamon,* 972 F.2d at 1149–50.

Turning full circle and bringing the FLSA essentially to its present posture, the Supreme Court's 1985 opinion in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 533, 105 S.Ct. 1005, 1008, 83 L.Ed.2d 1016 (1985), overruled the holding in *National League of Cities,* leaving the states and cities subject once again to the full effect of the FLSA. *Garcia,* 469 U.S. at 556–57, 105 S.Ct. at 1020. Because of the difficulty posed to state and local employers by the sudden resurrection of the FLSA, Congress delayed the FLSA's application to state and local governments until April 15, 1986. *Lamon,* 972 F.2d at 1150.

The backbone provisions of the FLSA are its minimum wage and overtime requirements. *Id.* The FLSA's principal provision compelling the payment of an overtime wage for hours worked above a maximum hour threshold is § 207(a):

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Although a state or local government, in its employment of law enforcement or fire protections personnel, may chose to conform to the maximum hour and overtime provisions contained in § 207(a)(1), the governmental entity may adopt an alternative scheme available under § 207(k). *Lamon,* 972 F.2d at 1150. In enacting the FLSA Amendments of 1974, "Congress recognized that certain jobs are not easily susceptible to the workweek method of wage and time calculations, and therefore provided special calculation methods for some trades, including fire protections and law enforcement." *Id.* (citing *Wethington v. City of Montgomery,* 935 F.2d 222, 224 (11th Cir.1991)). Raising the regular rate ceiling, § 207(k) provides:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if—
> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k). Pursuant to 29 C.F.R. § 553.201, the Secretary of Labor has established that 171 hours is the maximum number of hours a law enforcement officer may work in a work period of 28 days before the officer must be paid an overtime wage. *See* 29 C.F.R. § 553.230. Accordingly, in a 28–day period, § 207(k) permits a law enforcement employer to pay its officers an overtime wage only for work in excess of 171 hours. *Lamon,* 972 F.2d at 1150; *Lee v. Coahoma County,*

*Mississippi,* 937 F.2d 220 (5th Cir.1991), *opinion superceded by,* 37 F.3d 1068 (5th Cir.1993) (correcting footnote).

### 1. How do the Plaintiffs accrue overtime—Does § 207(k) apply?

Having determined that the Plaintiffs are covered by the FLSA, the Court must still determine how they accrue overtime under the Act. Defendants argues that the Plaintiffs should accrue overtime pursuant to the requirements of § 207(k). Therefore, the Court looks to see whether the Defendants have adopted an employment policy consistent with § 207(k) and which Plaintiffs qualify as "law enforcement personal" under this section of the Act.

### a. Whether the Stone County Commission and the Stone County Sheriff's Department had in Place a Policy Which Allowed Plaintiffs to Incur Overtime Only for Hours Worked in Excess of 171 Hours in a 28–day Work Period

 Plaintiffs argue that an employment policy implementing § 207(k) has never been adopted by the Stone County Sheriff's Department. Plaintiffs contend: (1) that the Commission did not implement the policy by clear and affirmative evidence; (2) the Commission did not "officially" implement the policy because it failed to record such an act in the county record; and (3) that Sheriffs Mease and Hill have never adopted an employment policy which corresponds with § 207(k).

 The burden is on the employer to show it has adopted a § 207(k) exemption. *Birdwell v. City of Gadsden,* 970 F.2d 802, 805 (11th Cir.1992). The Court should narrowly construe the exemption against the employer and should interpret the Act liberally in the employee's favor. *Id.* The employer must prove the applicability of the exception by "clear and affirmative evidence." *Id.* Courts, however, have interpreted this "clear and affirmative evidence" standard very loosely. *See Kermit C. Sanders Lodge No. 13 v. City of Smyrna, Ga.,* 862 F.Supp. 351, 355

(N.D.Ga.1994). In *Kermit C. Sanders* the defendants offered the following evidence that they had adopted a work schedule consistent with § 207(k); they presented a policy statement from the city which provided for "a 28–day work period allowing 171 hours (worked) prior to an overtime liability," an interoffice memo stating that the FLSA provides for the payment of overtime to certain law enforcement personnel at one and one-half times their regular rate of pay for every hour worked in excess of eighty-six hours in any given two week pay period," the affidavit and supplemental affidavit of Chief Hook, the affidavit and supplemental affidavit of Captain Brack, and the pay period of fourteen (14) days. The court concluded this evidence was sufficiently clear and affirmative evidence to indicate that the City did adopt a fourteen day work period. *See also Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1344 (11th Cir.1994) (concluding that § 207(k) was adopted where "The detectives complain that they are 'not paid overtime until 171 hours of work are accumulated in the 28 day cycle.' Instead of proving their claim, that fact simply demonstrates that the City has adopted, and calculates the detectives' overtime in accordance with, a twenty-eight day work period.") (footnote omitted).

The evidence in this case that the Stone County Sheriff's Department adopted an employment policy consistent with § 207(k) is much more compelling than the evidence presented in *Kermit C. Sanders.* In March, 1991, the Sone County Commission retained a consultant named Charles Campbell for the purpose of drafting new County personnel policies. Mr. Campbell specifically advised the Commission to enact a 171–hour/28–day policy for its law enforcement employees. The Commissioners met with Mr. Campbell on several occasions to discuss the new policies. In late 1991, the Commissioners implemented the new policies. The policies were handed out to and adopted by the County's officeholders. The policies were provided

to the employees of the County, the employees of the various officeholders, and meetings were held to discuss the policies. Sheriff Mease, who was Sheriff in 1991, testified that he did not play a role in adopting this new employment policy for the Stone County Sheriff's Department. The policies, however, have been followed by all county officeholders since 1991.

All of the Plaintiffs admit that they received a copy of the Stone County Personnel Policies. All versions of the policy presented to Plaintiffs contained language which included a § 207(k)—(171–hour/28–day)—policy was applicable to all law enforcement personal in the Stone County Sheriff's Department.[8] Sheriffs Mease and Hill admitted they scheduled employees on a twenty-eight day basis and this was done to correspond with the pay period that the county had adopted for their employees. None of the Plaintiffs objected to the 171–hour/28–day schedule. The Sheriff's Department employees have taken advantage of the holidays, vacation, and sick leave provisions in the policies. Since 1991, the County Clerk has used a 28–day work schedule and has calculated overtime based on 171 hours worked in a 28–day period. The facts also indicate that the Sheriff, even if he disagreed with this policy, was aware of its existence, understood the policy, handed the policy out to all of the Plaintiffs, and did not adopt a different policy. While the implementation of this policy more closely resembled a unilateral act on the part of the Commission then a consultation with the Sheriff, the Court finds that this policy was implemented by the Sheriff's Department. A misunderstanding between the Sheriff and the Commission regarding whether the Sheriff was required to implement this policy does not alter the fact that his policy was implemented by Sheriff Mease and followed by Sheriff Hill.

Whether the Stone County Commission can force the Stone County Sheriff to accept an employment policy that he or she does not agree with is a question of state law. It appears that this question should be resolved by the Circuit Judge of Stone County. Mo.Rev.Stat. § 57.250. It is also a question that this Court need not answer at this time. Regardless of whether the County can force the Sheriff to accept a § 207(k) employment policy, the facts in this case indicate that the Sheriff's Department adopted a new employment policy in 1991 which was consistent with § 207(k). The Court concludes that clear and affirmative evidence indicates that both Stone County and the Sheriff's Department of Stone County adopted an employment policy consistent with § 207(k).

■ Finally, the Plaintiffs argue that because the Commission cannot point to a place in the county record where the Commission adopted this policy, it is not official. The Court rejects this argument for two reasons. First, the determination of whether an employment policy has been adopted for purposes of the FLSA is a question of federal law. The standard is whether there is clear and affirmative evidence that a policy was adopted, not whether there has been an official act by the employer. The Court has concluded that the Commission satisfies this burden. See Bedford v. City of Del City, 28 F.3d 112 (Text in Westlaw) 1994 WL 273825 (10th Cir.1994) ("Contract and state law issues are not germane to our determination that the city has not violated the Fair Labor Standards Act."). Second, even if the Court were to conclude that the Commission has not officially adopted this em-

---

8. The policies contained an Addendum for the Sheriff's Department which stated:

> The work period/pay period for emergency service personnel of the Stone County Sheriff's Department is 28 days. An employee must work more than 171 hours within the 28 day period to be eligible for compensatory time or overtime pay. All hours worked beyond the 171 hours will be compiled at 1.5 times the number of hours worked beyond the limit. the Sheriff and the Stone County Commission retain the right to determine how hours worked beyond the limit of 171 hours will be compensated (by either being paid compensation or compensatory time off). Employees can accrue a maximum of 480 hours of compensatory time.

ployment policy, as noted above, the Court has concluded that Sheriff Mease not only adopted but implemented a policy consistent with § 207(k). Therefore, this policy was implemented irrespective of the Commission's official actions.

### b. Whether the Sheriff's Deputies and Jailers are "employees in law enforcement activities" Under 29 C.F.R. § 553.211

The Court must also determine which Plaintiffs are employees engaged in law enforcement activities for purposes of 29 U.S.C. § 207(k) and 29 C.F.R. § 553.211(f). The parties agree that those individuals who worked full time as deputies were law enforcement personnel subject to § 207(k). In this case, the following Plaintiffs were or are employed as sheriff's deputies during the time period noted:

| Jody Baker | Date of hire (03/06/95) | to | present |
|---|---|---|---|
| Jimmy Beck | 09/22/95 | to | present |
| Greg Bolin | 10/17/95 | to | termination |
| Paul Branstetter | 01/01/95 | to | present |
| Gary Carr | Date of hire (04/01/93) | to | present |
| Kent Doucey | 02//07/94 | to | termination |
| Tim Gideon | Date of hire (02/08/94) | to | present |
| William Heinzl | Date of hire (02/01/90) | to | present |
| Al Kinser | Date of hire (01/01/91) | to | present |
| Alan Miller | Date of hire (04/01/94) | to | termination |
| Jeff Myers | 11/01/96 | to | present |
| Alan Outhouse | Date of hire (01/01/89) | to | termination |
| Tim Rinehart | 08/29/96 | to | present |
| Forrest Thompson | Date of hire (06/06/94) | to | termination |
| Vernon Warren | Date of hire (01/01/89) | to | termination |

While serving as sheriff's deputies, these Plaintiffs were not entitled to overtime unless they worked more than 171 hours in a 28–day work period.

"Security personnel in correctional institutions" are also covered by the § 207(k) exemption from the FLSA's general overtime provision. Employees who qualify as security personnel for purposes of § 207(k) are "those who have responsibility for controlling and maintaining custody of inmates and of safeguarding them from other inmates or for supervising such functions, regardless of whether their duties are performed inside the correctional institution or outside the institution." 29 C.F.R. § 553.211(f). Plaintiffs agree that those who were employed as jailers were engaged in law enforcement activity. In this case,

| Jimmy Beck | Date of hire (01/26/93) | to | 09/22/95 |
|---|---|---|---|
| Greg Bolin | Date of hire (01/08/95) | to | 10/17/95 |
| Paul Branstetter | Date of hire (03/23/93) | to | 10/31/94 |
| William Heagerty | Date of hire (11/16/94) | to | termination |
| Jeff Myers | 01/01/96 | to | 11/01/96 |

While serving as jailers, these Plaintiffs were not entitled to overtime unless they worked more than 171 hours in a 28–day work period. There is no overtime under the FLSA for law enforcement personnel when the hours worked do not exceed 171 hours in a 28–day period. *Monahan v.* *County of Chesterfield, Va.,* 95 F.3d 1263, 1280–84 (4th Cir.1996); *Arnold v. Arkansas,* 910 F.Supp. 1385, 1393–94 (E.D.Ark. 1995).

### c. Plaintiffs who are not law enforcement personnel

The following Plaintiffs were employed as dispatchers or jailer/dispatchers during the times noted:

| | | | |
|---|---|---|---|
| Janie Beck | Date of hire (03/23/93) | to | present |
| Paul Branstetter | 10/31/94 | to | 01/01/95 |
| Kent Doucey | Date of hire (08/08/91) | to | 02/07/94 |
| Jeff Myers | Date of hire (02/08/95) | to | 01/01/96 |
| Tim Rinehart | Date of hire (06/01/95) | to | 08/29/96 |
| Alan Stuart | Date of hire (04/06/96) | to | termination |
| Nina Stults | Date of hire (06/26/89) | to | termination |
| Hazel Turner | Date of hire (06/25/88) | to | present |

While serving as dispatchers, these Plaintiffs were not law enforcement personnel subject to § 207(k). *See* 29 C.F.R. § 553.212(b). Moreover, those who worked as jailers/dispatchers, but spent more than 20 percent of their time as dispatchers, are not subject to the § 207(k) exemption. 29 C.F.R. § 553.212 Therefore, during the times noted above, these Plaintiffs were eligible to receive compensatory time credits for any time worked in excess of forty (40) hours in any workweek.

### 2. How must the Plaintiffs be compensated for overtime—Can Defendants award compensatory time rather than cash payment for overtime hours worked?

The FLSA, 29 U.S.C. § 207(*o*), allows public employers to compensate all employees for overtime with compensatory time off (comp time) rather than overtime pay. Compensatory time off may be awarded in lieu of pay if there is an "agreement or understanding" between the employer and employee. 29 U.S.C. § 207(*o*)(2)(A)(ii). 29 C.F.R. § 553.23(c) elaborates on the requirement of an agreement or understanding, stating in pertinent part:

> An agreement or understanding may be evidenced by a notice to the employee that compensatory time off will be given in lieu of overtime pay. In such a case, an agreement or understanding would be presumed to exist for purposes of section 7(*o*) with respect to any employee who fails to express to the employer an unwillingness to accept compensatory time off in lieu of overtime pay.

As noted above, the evidence in this case established that in 1991 the Stone County Commission adopted personnel policies which state, "The Sheriff and the Stone County Commission retain the right to determine how hours worked beyond the limit of 171 hours will be compensated (by either being paid compensation or compensatory time off)." All of the Plaintiffs received copies of this policy which indicated that they may be given comp time for having worked overtime.

Section 553.23(c)(1) indicates that an agreement or understanding with individual employees need not be in writing but a record of its existence must be kept pursuant to § 553.50.[9] The evidence at trial indi-

9. Section 553.50 states:
For each employee subject to the compensatory time and compensatory time off provisions of section 7(*o*) of the Act, a public agency which is a State, a political subdivision of a State or an interstate governmental agency shall maintain and preserve records containing the basic information and data required by § 516.2 of this title and, in addition:
(a) The number of hours of compensatory time earned pursuant to section 7(*o*) each workweek, or other applicable work period, by each employee at the rate of one and one-half hour for each overtime hour worked;
(b) The number of hours of such compensatory time used each workweek, or other applicable work period, by each employee;
(c) The number of hours of compensatory time compensated in cash, the total amount paid and the date of such payment; and
(d) Any collective bargaining agreement or written understanding or agreement with respect to earning and using compensatory time

cated that the Stone County Clerk's Office kept records of compensatory time earned by the Plaintiffs in accordance with the requirements of § 553.50. Moreover, a pay voucher was filled out by either Sheriff Mease or Hill every other week so that the Plaintiffs could be paid by the County. These pay vouchers provided a space for the Plaintiffs to indicate whether they were being paid for either "Hours Worked," "Comp Time Used," "Holiday Used," "Sick Used," "Funeral Used," or "Vacation Used." At some point during their employment, all but two of the Plaintiffs "cashed-in" or were paid for compensatory time which they used because they had not worked the requisite 40 or 160 hours during the pay period. These pay vouchers were signed by the Sheriff and submitted to the Clerk's Office.

Furthermore, Sheriffs Mease and Hill testified that they knew that the Sheriff's Department employees would be compensated for overtime with comp time and that they informed the Plaintiffs of this. Each Plaintiff testified that he or she understood at or near the time of hiring that compensatory time is received as compensation for overtime. Every Plaintiff except for one testified that he or she never complained regarding the compensatory time system. Only Plaintiff Nina Stults testified that she complained about receiving compensatory time instead of pay, but she never refused a paycheck or refused to work overtime.

Sheriff Mease testified that none of the Sheriff's Department employees complained to him about receiving compensatory time instead of pay. Defendants Dean, Henbree, and Long each testified that none of the Plaintiffs ever complained to them about the compensatory time system. Consequently, all Plaintiffs had notice at or near the time they were hired that they would be compensated for overtime with compensatory time. During their employment, Plaintiffs accepted com-

pensatory time without complaint. In *Smith v. Upson County, Georgia,* 859 F.Supp. 1504 (M.D.Ga.1994), the Court, interpreting § 553.23, held: "In the absence of 'contemporaneous protest,' an agreement is presumed to exist." *Id.* at 1509.

In *Banks v. City of Springfield,* 959 F.Supp. 972 (C.D.Ill.1997), the plaintiff police academy cadets claimed in part that the defendant city violated the FLSA by forcing them to accept compensatory time off of work in lie of cash overtime payments. Since no plaintiff had requested a cash payment for overtime, the court held that they were estopped from complaining about the compensatory time system. *Id.* at 979.

In similar cases, involving agreements as to the compensability of "sleep time" under 29 C.F.R. § 553.222, the courts have overwhelming held that "continuance of employment can be evidence of an implied agreement to the terms of that employment." *Bodie v. City of Columbia, S.C.,* 934 F.2d 561, 563 (4th Cir.1991); *Rousseau v. Teledyne Movible Offshore, Inc.,* 805 F.2d 1245, 1248 (5th Cir.1986), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); *Ariens v. Olin Mathieson Chemical Corp.,* 382 F.2d 192, 197 (6th Cir.1967); *General Elec. Co. v. Porter,* 208 F.2d 805, 812 (9th Cir.1953), *cert. denied,* 347 U.S. 951, 74 S.Ct. 676, 98 L.Ed. 1097 (1954). In *Rousseau,* the Fifth Circuit stated:

> Of course, it is clear that the employees did not like the ... rule. But their dislike does not negate the existence of an agreement. As the district court pointed out, continuance of employment can be evidence of an implied agreement to the terms of that employment.

*Id.* at 1248.

In *Ariens,* the plaintiff employees sought overtime pay for sleeping time which they were required to spend on the employer's premises. When the plaintiffs

off. If such agreement or understanding is not in writing, a record of its existence must be

kept.

commenced work they were issued a policy pamphlet explaining the compensation system. In addition, "all the men admitted they 'found out' about the schedule on the first day of work. They, of course, realized they were not being compensated for the sleep periods when they received their first paycheck.... Some of the plaintiffs complained to the chief of the unit about the lack of compensation for the sleep periods but no paychecks were refused." *Ariens*, 382 F.2d at 194. The court held that under such circumstances, there was sufficient evidence to constitute an implied agreement between the parties. *Id.* at 197.

In *Harrison v. City of Clarksville, Tennessee*, 732 F.Supp. 810 (M.D.Tenn.1990), the fire fighter plaintiffs challenged the defendant city's use of a compensation system which exluded sleeping and eating periods from compensable time. All of the plaintiffs were hired after the city implemented its compensation system. The chief did not discuss specifically the exclusion of meal and sleep periods from compensable time during hiring interviews and each plaintiff contended that he was not actually aware of the exclusion when he accepted the position. *Id.* at 812. The plaintiffs, however, learned of the policy almost immediately after they began working. With two exceptions, the plaintiffs waited at least one month after learning or receiving notice of the exclusions before expressing objection. *Id.* None of the plaintiffs took steps to initiate a change in the policy. "Nor did any of the designated plaintiffs quit their jobs or refuse to accept their paychecks." *Id.* at 813.

The Court stated: "Where the circumstances and actions of the parties demonstrate that the plaintiffs were aware of a particular matter, their acceptance of and continuance in the employment manifests assent on that matter." *Id.* The court continued:

> Under the FLSA, an employee's continued employment and acceptance of pay is evidence of the employee's implied agreement to certain practices, terms and conditions of employment. Traditionally, the courts have inferred from continued employment and acceptance of pay that an agreement existed on a particular matter, even if the employee voiced an objection on the matter.
>
> \* \* \* \* \* \*
>
> At the very least, to negate the inference of agreement to the exclusion, the employee must expressly object within a short period after learning of the employer's intent to exclude the time.... New hires have an opportunity before accepting employment to discover the terms of employment that are material to their decisions whether to take their jobs. Failure to discuss a particular term before accepting a position indicates either that the term was not material to the decision to accept the job, or that the term, though material, was simply overlooked. Where the parties discover the overnight shortly after hire, and the employee decides to continue in his employment and to accept his paycheck, the employee's actions manifest his acceptance of the originally overlooked term, even though he expresses his objection to the term. In other words, the employee has the same option before him when the oversight is discovered as he would have had were the matter discussed before he was hired: accept the disputed term by accepting employment, or look for employment elsewhere.

*Id.* at 814–15. The court held that all plaintiffs agreed to exclude sleeping and eating periods from compensable time by failing to object, continuing to work, and accepting their paychecks. Even with regard to the two plaintiffs who did object, the court concluded that they indicated only that while they would prefer a different system, they were willing to accept the arrangement along with the benefits of their employment with the defendant. *Id.* at 815–16.

These cases provide compelling authority for the conclusion that the Plaintiffs in this case had an agreement or understand-

ing that they would receive compensatory time instead of cash payment for overtime hours worked. The evidence establishes that both Sheriff Mease and Hill were aware that Stone County adopted a policy of awarding comp time in lieu of overtime payment in 1991. While the Sheriffs had reservations about and expressed animosity towards this policy, they both followed the policy, informed all Sheriff's Department employees that this was the policy, and failed to adopt a different policy. Each Plaintiff testified that he or she knew at the time of hiring or shortly after that compensatory time was received for overtime. Only Plaintiff Stults indicated that she "objected" to this, but the Court finds that while Stults may have preferred to have received payment for overtime hours worked, she did not refuse a paycheck nor did she refuse to continue working for the Sheriff's Department. In fact, Stults "cashed-in" or was compensated for over 300 hours of compensatory time which she had accrued.

The evidence demonstrated that by 1993 all of the Plaintiffs, who were employed at that time, were aware that they would receive comp time and not payment for overtime hours worked. The pay vouchers used by the Sheriff's Department and the Plaintiffs pay stubs indicated that Plaintiffs would receive comp time for overtime hours worked and that they could cash-in comp time for hours missed during the pay period. All of the Plaintiffs continued to work for the Sheriff's Department and received the benefits of that employment. All of the Plaintiffs received paychecks and none refused the checks or the overtime assignments. Many of the Plaintiffs were reappointed by Sheriff Hill in January 1997 with full knowledge of the compensatory system used by the Sheriff's Department. The evidence indicates that most if not all of the Plaintiffs would rather receive payment in lieu of comp time for overtime work. The Plaintiffs' desires, however, do not change the fact that they agreed to work for the Sheriff's Department pursuant to the compensatory time system. Nor does Sheriffs' Mease and

Hill desire to have paid overtime, alter the fact that they ultimately agreed to and implemented the County's compensatory time system. The Court concludes that for the relevant time periods of this case, the evidence demonstrates that the Plaintiffs agreed to work for a Sheriff's Department which would compensate them for overtime hours worked with comp time.

### a. Whether Plaintiffs are "Public Safety" and "Emergency Response" employees

The FLSA places a limit on the number of compensatory hours which an employee may accrue. If the employee exceeds this number of hours he or she must be reimbursed through cash payment for these hours worked. Having concluded that the Plaintiffs may be awarded compensatory time in lieu of cash payment for overtime, the Court must also consider whether Defendants have violated § 207(*o*)(3) by allowing Plaintiffs to accrue more than the maximum number of compensatory hours allowed. The maximum number of compensatory hours which may be accrued depends on the type of work in which the employee is engaged.

Employees engaged in "public safety" or "emergency response" activities may accrue up to a maximum of 480 hours of compensatory time before the employer must make cash payments to them for their overtime work. 29 C.F.R. § 553.24. In this case, the sheriff's deputies and jailers are engaged in "public safety activities" and may accrue up to 480 hours of comp time. *Id.* at § 553.24(c). The dispatchers are specifically excluded from public safety activity, *Id.* at § 533.211(g), but are engaged in "emergency response activities." *Id.* at § 553.24(d). Plaintiffs do not contest that they are all engaged "public safety activity" or "emergency response activity." Therefore, no violation of the FLSA has occurred unless Plaintiffs have accrued more than 480 of compensatory time without pay.

### b. "Other compensatory time" credits are not covered by the FLSA

 The statutory limitation on compensatory time applies only to true compensatory time. *i.e.*, time earned for hours worked in excess of 171 hours in a 28–day period. "Straight time," time earned for hours worked between 160 and 171 hours in a 28–day period, is not covered by the FLSA. *Monahan*, 95 F.3d at 1280–84; *Arnold*, 910 F.Supp. at 1393–94. Because "straight time" is not governed by the FLSA, it is "other compensatory time" and is not subject to the statutory limitation on accrued time. 29 C.F.R. § 553.28(e). The Sheriff's Department's awarding of holiday time, sick time, funeral time, and vacation time are also not governed by the FLSA. Consequently, the FLSA was not violated if each Plaintiff did not accrue in excess of 480 hours in compensatory time.

### C. Computation of the Plaintiffs' Worksheets Under the FLSA

Finally, the Court is required to turn its attention to the pay records of the Plaintiffs and the Commission. The parties also dispute how the Plaintiffs' total accrued compensatory, straight, an holiday time should be computed. In calculating these hours the parties raise three arguments: (1) whether "undesignated leave time" should be subtracted from a plaintiff's holiday time bank or compensatory time bank first; (2) whether lunch breaks are compensable for all Plaintiffs; and (3) whether time spent caring for the County's drug dog is compensable.

### 1. Holiday Time First

 Perhaps the most difficult issue presented by this case is how to calculate the Plaintiffs accrued compensatory time. Based on the evidence presented at trial, Defendants violated 29 C.F.R. § 553.50. This section of the federal regulations requires an employer to keep records of:

(a) The number of hours of compensatory time earned pursuant to section 7(*o*) each workweek, or other applicable work period, by each employee at the rate of one an one-half hour for each overtime hour worked;

(b) The number of hours of such compensatory time used each workweek, or other applicable work period, by each employee;

Neither the Sheriff's Department nor the Stone County Clerk's Office were able to produce contemporaneous records indicating how much compensatory time a Plaintiff had earned after any given pay period. The Clerk's office was able to go back and calculate how much comp time each Plaintiff had at the time of the trial, by looking at the Plaintiff's old time cards and adding up the hours, but the Clerk's office could not produce any contemporaneous records which contained this information.

Moreover, for a period of time the Plaintiffs' pay-stubs contained a category designated comp time. Defendants argue that this designation represented the total number of holiday hours, straight hours, and compensatory hours which the Plaintiff had accrued. After any given pay period, however, Defendants were not sure what portion of a Plaintiffs' "comp time" was holiday time or compensatory time. After the initiation of this lawsuit, the Clerk's office stopped printing this information on the Plaintiffs' checks all together.

In preparing their summaries for trial, Defendants determined the amount of time each year that each Plaintiff had been paid for but had not worked.[10] Dean then determined the number of straight hours earned, compensatory hours earned, and holiday hours accrued in each year. If the employee designate the time off on his or her time card as holiday or compensatory time, Dean honored that designation and

---

10. In determining leave taken to equal 40 or 160 hours, depending on the employee, Dean testified that the Clerk's Office did not include time off designated as vacation or sick leave.

In other words, time was not subtracted from straight, compensatory, or holiday time to compensate for sick or vacation leave thereby assuring time was not counted twice.

reduced the appropriate bank of time. If the employee did not designate the time off on his or her time card, but the Sheriff's Department designated the time off as holiday or compensatory time on the pay voucher, Dean followed the Sheriff's Department designation. If neither the time card nor the pay voucher designated the time off as compensatory time or holiday time, Dean subtracted the time first out of the straight and compensatory time banks, then out of the holiday bank.

The Defendants argue that they should be allowed to deduct compensatory time first because they are not obliged to give the Plaintiffs any holiday time under the FLSA nor obliged to pay Plaintiffs if their accrued holiday time exceeds 480 hours. The problem with Defendants argument, however, is it allows Defendants to benefit from their violation of 29 C.F.R. § 553.50. The importance of § 553.50 and contemporaneous time records is that they insure employers do not violate 29 U.S.C. § 207(*o*)(3)(A) by allowing their employees to accrue more than 480 hours of comp. time. The evidence presented in this case demonstrated that on any given week, the County and the Sheriff's Department was not aware of whether any of its employees had accrued more then 480 hours of compensatory time. In other words, the Court finds that the County's employment policy which was implemented by the Sheriff's Department complied with 29 U.S.C. § 207(*o*)(1) and § 207(*o*)(2), but failed to ensure that the County would not violate § 207(*o*)(3).

Moreover, not only did the County fail to keep accurate records under § 553.50, but its habit of lumping the Plaintiffs' holiday and compensatory time together encouraged the Plaintiffs to stop distinguishing between the two time categories. The County's behavior gave every indication to the Plaintiffs that it did not matter whether they used compensatory time or holiday time because it all came out of the same time bank. More importantly, the County's behavior also indicated that even if the Plaintiff were to accrue more than 480 hours of compensatory time he or she would not be compensated with cash payment.

The County's argument that it need not compensate Plaintiffs for holiday time and therefore can subtract this time out of there aggregate time banks first, misses the point that this was not part of the County's employment policy with Plaintiffs. The County could have adopted an employment policy which told Plaintiffs that it would subtract time from an employee's compensatory time bank if the employee failed to specify from which time bank his or her leave time should be made up. The County could have also adopted a policy which stated that it would always subtract time from compensatory time first and holiday time second. The County, however, did not adopt either of these policies. More importantly the County did not follow either of these employment policies. Only once this lawsuit was filed did the County go back and "recalculate" or add up the Plaintiffs compensatory and holiday time banks. And, only at this time did the County suggest that it should be allowed to have a policy where straight and compensatory time were subtracted from the Plaintiffs aggregate time banks before holiday time. Had the Plaintiffs been notified of such a policy, even through practice if not through an official policy, they might have altered there behavior. The Court finds that it would be unfair and a violation of § 207(*o*)(3)(A) to allow the County to modify its employment policy to justify its failure to comply with 29 C.F.R. § 553.50 and 29 U.S.C. § 207(*o*)(3)(A).

While the FLSA does not give Plaintiffs the right to complain about mathematical mistakes in hours worked, the Court does find that the Defendants and the County Clerk's office have erred in calculated the total hours of holiday, straight, and compensatory time accrued by the Plaintiffs. The Court therefore orders the Clerk's office to re-calculate exhibits 129A through 139 to make the following modifications.

First, the Court is unaware whether a new employment compensation policy has

been adopted by the Stone County Sheriff's Department since the date of trial.[11] If a new policy has not been adopted, the Clerk's office is directed to calculate these new time worksheets through the date of this Order. If a new employment compensation policy has been adopted by the Sheriff's Department, the Clerk's Office is directed to calculate these new time worksheets up to the official start date of that policy.

Second the Clerk's office is directed to use the same method used previously for calculating leave time. The Clerk should determine the amount of time each year that each Plaintiff had been paid for but had not worked. In determining "leave taken to equal 40 hours" or "leave taken to equal 160 hours" the Clerk should not include time off designated as vacation or sick leave.

Third the Clerk erred in not calculating certain employees as "40–hour" employees. As noted above employees working as dispatchers are awarded comp time for hours worked in excess of hours per 7–day work period. The Clerk's office needs to recalculate the following employees' time sheets for the following time periods.

| Paul Branstetter | 10/31/94 | to | 01/01/95 |
| Kent Doucey | Date of hire (08/08/91) | to | 02/07/94 |
| Jeff Myers | Date of hire (02/08/95) | to | 01/01/96 |
| Tim Rinehart | Date of hire (06/01/95) | to | 08/29/96 |
| Alan Stuart | Date of hire (04/06/96) | to | termination |

During these time periods, these employees' leave time should be calculated on a 40–hour basis and they should only be awarded comp. time, not straight time, for overtime hours worked.

Fourth the Clerk's office should subtract leave time first from holiday time, second from straight time, and third from comp. time. For the reasons discussed above, the Clerk should simply apply this formula to all leave time taken and not try to determine whether Plaintiffs designated that their leave time be subtracted from a specific time bank.

Fifth the Court notes that hours subtracted from several Plaintiffs' time banks exceeded the leave taken hours for those Plaintiffs in 1998. For example, in 1998 Jody Baker had 24 hours of leave time but 20.25 hours were subtracted from her straight time and 24 hours were subtracted from her holiday time. Similar discrepancies occurred on Janie Beck's, Jimmy Beck's, Gary Max Carr, and Jeff Myers' worksheets. The Court assumes that these discrepancies will be corrected or explained.

11. As the Court has noted in this Order, while neither Sheriff Mease nor Hill adopted their own Sheriff's Department Employment Policy they may attempt to do so in the future. Under Missouri law, however, a sheriff may not unilaterally determine "the compensation" of his or her employees. Mo.Rev.Stat. § 57.250. Although the Court is not confronted with this issue presently, it notes that since the circuit judge of the county has the authority to set "the compensation" for sheriff's department employees it is likely that the judge also has the authority to set the rate and manner of compensation. Consequently, the circuit judge probably has the authority to approve any new employment policy suggested by a sheriff.

Moreover, a sheriff may not unilaterally determine his or her budget. A sheriff wishing to endear him or herself to his or her employees could allow them to work extended hours of overtime and, consequently, exhaust the county budget. Therefore, it appears Missouri law would not allow a sheriff to adopt an employment policy which may require the sheriff to exceed his or her annual budget. While a sheriff may try and avoid this problem by submitting a budget which contains expenditures for fixed number of overtime hours worked annually, the Court notes that if such a budget were adopted the analysis of this Order would change and it is likely that under the FLSA the Sheriff may be the sole entity financially responsible to his or her employees for overtime hours worked. These issues would appear to encourage sheriffs to collaborate with the county commission in adopting new employment policies.

The Court is reasonably confident, that even after these re-calculations, no Plaintiff will have accrued over 480 hours of compensatory time. These computations, however, are important for future compensation of Plaintiffs and are important for calculating compensation owed to Plaintiffs no longer employed by Defendants.

### 2. Compensation for lunches

█ In calculating the compensatory time which the Plaintiffs have accrued the Defendants argue that they should be allowed to subtract time the dispatchers have spent on lunch breaks. Defendants argue that whether Plaintiffs should be compensated for meal breaks depends upon the Plaintiff's position. Defendants County and Dean admit Plaintiffs who are jailers or dispatchers should be, and have been, compensated for their meal breaks. Plaintiffs who are sheriff's deputies, however, are not entitled to compensation for meal breaks and cannot count those meal breaks toward hours worked. 29 C.F.R. § 553.223(b) provides:

> If a public agency elects to use the section 7(k) exemption, the public agency may, in the case of law enforcement personnel, exclude meal time from hours worked on tours of duty of 24 hours or less, provided that the employee is completely relieved from duty during the meal period, and all the other tests in § 785.19 of this title are met. On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g., "stakeouts"), they are not considered to be completely relieved from duty, and any such meal periods would be compensable.

The standard applied by the Eighth Circuit in determining whether meal breaks for law enforcement personnel are compensable is whether the meal time is spent predominantly-for-the-benefit-of-the-employer. *Henson,* 6 F.3d at 534. "That a[n] officer is on-call and has some limited responsibilities during meal periods does not perforce mean the officer is working." *Id.* (citing *Lamon,* 972 F.2d at 1157).

The only evidence at trial regarding the compensability of Plaintiffs' meal breaks was the testimony of Ms. Dean. Dean testified that she reviewed the official dispatch log of the Sheriff's Department for the years 1993 through 1997. Dean further testified that the officers would radio in to the dispatch when they began and ended their meal breaks. In the three years, Dean found only three times where the meal break of a Plaintiff actually was interrupted by a dispatch. Only one of those three occasions resulted in a Plaintiff actually resuming active duty without later finishing his meal break. Plaintiffs did not dispute this evidence.

The Court agrees that Defendants do not have to compensate sheriff's deputies for their meal breaks. But the Sheriff's Department did compensate the deputies for these meal breaks and the County cannot retroactively "uncompensate" the sheriff's deputies for this time. The Plaintiff deputies may not be entitled to compensation for their lunch breaks, but the Defendants cannot now retroactively deduct that time from the Plaintiffs comp time which has accrued. The County Clerk, Ms. Dean, testified that lunches were only deducted from the Plaintiffs one time. This was done in an effort to get the Plaintiffs to record their lunch times. Dean stated that after that Plaintiffs were paid for their lunch time. None of the legal authority cited above stands for the proposition that an employer can retroactively deduct meal breaks. The Court will not allow the County to retroactively deduct meal time in this case.

### 3. Whether times spent caring for and training Sheriff's Department drug dog is compensable under FLSA

█ Plaintiff Gary Carr has also argues that he should be compensated for the time he has spent caring for and training the County's drug dog. Carr contends

that on average he spends five and half hours of time per week caring for and training the dog. He began caring for the dog in 1997 and claims that he should be compensated for this time.

The legal authority on this subject strongly supports Carr's claim. The district courts have almost uniformly held that as a matter of law "off-duty time expended in the care, training, and required demonstration of a canine unit dog constitutes compensable hours worked under the FLSA." *Truslow v. Spotsylvania County Sheriff*, 783 F.Supp. 274, 279 (E.D.Va.1992), *aff'd*, 993 F.2d 1539 (4th Cir.1993) (Text in Westlaw). Although *Truslow* was the first case to establish this proposition, courts have overwhelmingly endorsed this opinion. *See Rudolph v. Metropolitan Airports Comm'n*, 103 F.3d 677, 681 (8th Cir.1996) (considering issue in light of 29 C.F.R. § 785.11 but noting that time spent caring for dogs was compensable); *Reich v. New York City Transit Auth.*, 45 F.3d 646, 650–51 (2d Cir.1995) (walking, feeding, grooming, training, and cleaning up after police dogs are integral and indispensable parts of handler's principal activities and are compensable under the FLSA); *Udvari v. United States*, 28 Fed.Cl. 137 (1993) (same); *DeBraska v. City of Milwaukee*, 11 F .Supp.2d 1020, 1031 (E.D.Wis.1998) (same); *Jerzak v. City of South Bend*, 996 F.Supp. 840, 846 (N.D.Ind.1998) (same); *Albanese v. Bergen County, N.J.*, 991 F.Supp. 410, 420 (D.N.J. 1997) (same); *Hellmers v. Town of Vestal, N.Y.*, 969 F.Supp. 837, 842 (N.D.N.Y.1997) (same); *Karr v. City of Beaumont, Tex.*, 950 F.Supp. 1317, 1322 (E.D.Tex.1997) (finding care of dog was work and compensable); *Andrews v. DuBois*, 888 F.Supp. 213 (D.Mass.1995) (same); *Levering v. District of Columbia*, 869 F.Supp. 24, 26–27 (D.D.C.1994) (finding dog time compensable; 30 minutes a day); *Nichols v. City of Chicago*, 789 F.Supp. 1438, 1442 (N.D.Ill.1992) (citing *Truslow* with approval).

The Court also finds that it is reasonable that Carr spends an average of five and half hours of time caring for and training the dog each week. The Defendants did not offer any evidence at trial to dispute this fact, nor did they impeach Carr's testimony. Legal authority also supports the finding that it is reasonable to spend 45 minutes a day on dog care. *See Rudolph*, 103 F.3d at 684 (finding 30 minutes a day on care reasonable); *DeBraska*, 11 F.Supp.2d at 1031 (finding it was a factual issue as to whether 30 minutes a day was reasonable); *Jerzak*, 996 F.Supp. at 846 (noting city compensated one hour per day); *Levering*, 869 F.Supp. at 26–27 (finding 30 minutes a day compensable). The Court notes that in light of 29 C.F.R. § 785.11 and the Eighth Circuit's holding in *Rudolph*, the parties may enter into an agreement as to how Carr will be compensated for dog care in the future. The parties may negotiate and determine that a different amount of time is reasonable. The Court, however, finds Carr's representation of five and hours pre week to be credible and directs that he should be compensated for that time.

Defendants raise several arguments as to why Carr should not be compensated for his dog care time. First, Defendants argues that Carr is part of the Sheriff's "command staff." That evidence at trial, however, failed to support a finding that Carr was a member of either Mease of Hill's personal staff, that he served on a policymaking level, or was an immediate advisers to them with respect to the constitutional or legal powers of their office.[12] Accordingly, the Court rejects this argument.

Defendants also argue that Carr failed to include this time on his timecards and, therefore, should not be compensated for his time. Defendants have not cited any legal authority for this proposition nor does the Court believe that any exists. The Court notes that the legal authority

---

12. See section III.A.2 of this Order. The evidence did not demonstrate that Carr had significantly different responsibilities or authority from the other Plaintiffs.

cited above fails to support the argument that Carr had to document this time on his weekly timecard to be reimbursed for it. Plaintiffs cannot waive their rights under the FLSA nor acquiesce in an employer's violation of the statute. The Court also rejects this argument.

■ Finally, Defendants also object that Carr's claim was not included in the Plaintiffs' Complaint. Plaintiffs' Complaint was filed September 1996 and Officer Carr did not start working with the County's drug dog until September of 1997. The Plaintiffs' Complaint, however, did indicate that Carr was seeking to recover wages for unpaid overtime. Moreover, the specific issue of time spent caring for the drug dog was raised before the trial at Carr's deposition. The Court heard testimony on this issue at trial and Defendants were given an opportunity to cross-examine Carr and present evidence. The Court finds that Defendants had notice of this issue, and to the extent that this claim was not pled in Plaintiffs' Complaint, the Defendants were not prejudice.

### D. Whether the FLSA's Two Year Statute of Limitations Applies

■ The general statute of limitations applicable to the FLSA is two years. 29 U.S.C. § 255(a). The FLSA contains a three-year statute of limitations which is applicable only if a violation of the FLSA occurred and the violation was wilful. *Id.* Willfulness requires a showing that the employer "either knew of showed reckless disregard for the matter of whether its conduct was prohibited by the statue." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

■ The evidence at trial established that, far from willfully violating the FLSA, the Defendants took numerous steps to attempt to comply with the act. The County was sued by a former Sheriff's Department employee, Ronald Weber, in 1991. After the Weber case, the County hired a consultant to draft policies which complied with the FLSA. As previously

noted, these policies were shared with the County's officeholders, including the Sheriff and ultimately adopted by the Sheriff's Department. Since 1991 the Defendants have adhered to their employment policy. Furthermore, on numerous occasions since 1991, Defendants have had in person and telephone conferences with Mr. Charles Morgan of the Wage and Hour Division to ensure that they were complying with the FLSA. Defendant DeLong testified that the County views the Wage and hour Division as a management tool to assist it in complying with the FLSA. It is evident that the County made a good faith effort to develop an employment policy which complied with § 207(k) and § 207(o) of the FLSA. The County's policy does in fact comply with the FLSA. It is the Sheriff's Department and the County's inadequate record keeping which violate the FLSA, because they prevent the Defendants from ensuring that their employees do not accrue more than 480 compensatory hours.

There was not any evidence presented at trial that the Plaintiffs had previously realized that they had accrued in excess of 480 compensatory hours and demanded payment from the Defendants. It is troubling and somewhat problematic that the Defendants were not keeping adequate records so that they could determine how many compensatory hours each Plaintiff had accrued, but there was not any evidence offered which would suggest that the County or the Sheriff's Department intentionally or willfully failed to keep these records to avoid making cash payments for overtime. Accordingly, the FLSA's two year statute of limitations applies in this case.

### E. Liquidated Damages

■ The Court does not believe that the Plaintiffs will be entitled to any monetary damages in this case. However, out of an abundance of caution the Court addresses the issue briefly. The FLSA plainly envisions that liquidated damages in an amount equal to the unpaid overtime

compensation are the norm for violations of § 207 of the Act. *Mayhew v. Wells,* 125 F.3d 216, 220 (4th Cir.1997) (citing 29 U.S.C. § 216(b)). Nonetheless, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified [in 29 U.S.C. § 216]." 29 U.S.C. § 260. *See also Cross v. Arkansas Forestry Com'n,* 938 F.2d 912, 917 (8th Cir.1991) ("The FLSA provides for an award of liquidated damages to an employee to remedy an employer's violation of the FLSA. However, the trial court has discretion not to award liquidated damages if the employer demonstrates that the violation was in good faith and objectively reasonable." (citation omitted)); *Barrentine v. Arkansas–Best Freight System, Inc.,* 750 F.2d 47, 51 n. 5 (8th Cir.1984) ("[E]ven if the employer shows both subjective good faith and objectively reasonable grounds for believing that its actions were not in violation of the statute, remission of liquidated damages remains within the sound discretion of the trial court."), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985).

As noted above, in determining whether a two or three year statute of limitations period applies, the Court has found that the Defendants did not willfully violate the FLSA. "Other courts have found that the same willfulness standard for the statute of limitations issue applies to the liquidated damages issue." *Theisen v. City of Maple Grove,* 41 F.Supp.2d 932, 941 (D.Minn.1999) (citing *Brinkman v. Dept. of Corrections of State of Kan.,* 21 F.3d 370, 372–73 (10th Cir.), *cert. denied,* 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994); *E.E.O.C. v. City of Detroit Health Dept.,* 920 F.2d 355, 359–60 (6th Cir.1990) (Guy, J., concurring)). The Court agrees with this conclusion, and finds that the same facts which supported the Court's determination that the Defendant's had not acted willfully for statute of limitations purposes also militates against an award of liquidated damages.

Moreover, the facts of this case demonstrates that Defendants acted in good faith and had reasonable grounds for believing that their omission was not a violation of the FLSA. The FLSA does not preclude an employer from subtracting compensatory time hours before subtracting holiday hours from an employees accrued hour time bank. Such behavior on the part of the Defendants would not violate the FLSA in the future. Moreover, the Defendants failure to keep adequate records pursuant to 29 C.F.R. § 553.50 does not violate the FLSA it only violates Department of Labor regulations. In this case, however, the Defendants' failure to keep contemporaneous records of the Plaintiffs' accrued compensatory time precluded the Defendants from proving that they did not violate § 207(*o*) by allowing the Plaintiffs to accrue more than 480 hours of compensatory time. The Court finds that the Defendants were acting in good faith and that they did not believe that the Plaintiffs had accrued more than 480 hours of compensatory, but that the Defendants could not prove that they did not violate § 207(*o*).[13]

---

**13.** To the extent that any Plaintiffs are entitled to monetary damages in this case, they may be entitled to recover prejudgment interest in order to fully compensate them for the losses they have suffered. *See Hultgren v. County of Lancaster, Neb.,* 913 F.2d 498, 510 (8th Cir.1990); *Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986) (citing cases from a number of circuits where prejudgment interest found warranted in the absence of a liquidated damage award). "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States,* 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987).

## F. Whether Delong, Hembree, Clark, and Dean are Entitled to Qualified Immunity From Plaintiffs' Suit

 The Court concludes that no evidence has been introduced to indicate that the Stone County Clerk, or Carolyn Dean, is an employer of any Plaintiff in this suit. Accordingly, Ms. Dean cannot be liable in her individual or official capacity and is dismissed with prejudice from this suit. Moreover, the Court finds that to the extent that any Defendant has been named in their individual capacity they are entitled to qualified immunity.

 Qualified immunity protects a government official from liability unless his or her performance of a discretionary function violated clearly established statutory or constitutional rights. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir.1998) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Qualified immunity protects "all but the plainly incompetent or those who willingly violate the law." *Jackson,* 140 F.3d at 1151 (quoting *Malley v. Briggs* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). The Court concludes that even if the Plaintiffs do have clearly established statutory rights under the FLSA, it would not be apparent to reasonable officials that the Defendants' actions in this case were unlawful. *Weiler v. Purkett,* 137 F.3d 1047, 1052 (8th Cir. 1998). While the County Commission has intentionally tried to avoid paying Plaintiffs cash for overtime hours worked, it is clear from the evidence that they have attempted to comply with the FLSA. The Court concludes that no Defendant has intentionally acted to violate Plaintiffs' rights or has acted unreasonably in imposing the County's employment policy upon Plaintiffs. Accordingly, the Defendants may only be held liable in their official capacities.

### III. CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendants must compensate Plaintiffs pursuant to the terms of the FLSA and the directions in this Order. It is further

ORDERED that the Defendants, working in conjunction with the Stone County Clerk's Office, will submit new versions of Defendants' exhibits 129A through 139. These new worksheets will be re-calculated using the formula outlined in this Order. Defendants should also specify exactly what they believe is due to Plaintiffs who are no longer employed by the Sheriff's Department. Defendants are directed to present these worksheets to Plaintiffs' counsel thirty (30) days from the date of this Order. Over the next thirty (30) days Defendants' counsel and Plaintiffs' counsel are encouraged to try and resolve any disputes which they may have over the computations contained in these new worksheets.

If the parties are unable to resolve these remaining compensation issues, then sixty (60) days from the date of this Order the Defendants shall submit the new worksheets to the Court. Plaintiffs may submit objections with supporting documentation, but no legal argument, and the Defendants may submit any supporting documentation which they believe is necessary to respond to Plaintiffs' objections. Finally, it is further

ORDERED that this Order should be considered a final adjudication on the merits of Plaintiffs' case. The Court concludes that all substantive issues of liability have been ruled upon and that only the recalculation of Plaintiffs' time records remains to be resolved. The parties should be cognizant of this holding for purposes of appeal and the calculation of deadlines.

IT IS SO ORDERED.